GOLD CIRCLE STORES, APPELLANT, *v.* CHEMICAL BANK-DOMMERICH DIVISION, ET AL., APPELLEES.

(No. 81AP-694—Decided March 30, 1982.)

Messrs. Vorys, Sater, Seymour & Pease and Mr. Philip A. Brown, for appellant.

Messrs. Bricker & Eckler, Mr. David K. Conrad and Mr. Richard Taps, for appellees.

WHITESIDE, P.J. This appeal by plaintiff Gold Circle Stores from a judgment of the Franklin County Court of Common Pleas raises an issue as to under what circumstances, if any, does the purchase in an out-of-state transaction of Ohio accounts receivable by a person engaged in the business of factoring subject such person to the jurisdiction of the Ohio courts in an action brought by the Ohio debtor to recover payment made upon the account after return of the merchandise for which the payment was made. Plaintiff raises a single assignment of error contending that "the trial court erred in dismissing the complaint for lack of personal jurisdiction."

Plaintiff in its complaint alleges that it is engaged in the business of making retail sales in Franklin County, Ohio, and other locations. In connection with that business, plaintiff purchased a quantity of "micro-eye detectors" from Bel Sales in November 1977 under a guaranteed sale provision providing that any of the items not sold by plaintiff could be returned to Bel Sales for full refund of the purchase price.

In October 1977, Bel Sales had sold all its accounts receivable to defendant Chemical Bank-Dommerich Division. Pursuant to instructions, plaintiff made payments for the merchandise directly to defendant Chemical Bank, rather than to Bel Sales. Later, the merchandise was returned by plaintiff to Bel Sales under the guaranteed sale provision, but plaintiff has not been paid therefor. Plaintiff seeks to recover from defendant Chemical Bank the purchase price for the returned merchandise, payment for which was made to Chemical Bank.

Defendant Chemical Bank filed a motion to dismiss for lack of jurisdiction supported by an affidavit and by a stipulation of the parties. The trial court sustained the motion upon the ground that insufficient contacts with Ohio have been demonstrated to justify personal jurisdiction over defendant Chemical Bank.

The stipulations indicate that defendant Chemical Bank in its factoring business has purchased many open accounts owned by Ohio vendees from its approximately two hundred regular customers, none of whom is headquartered in Ohio. Included in this group of customers was Beltron Sales U.S.A., Inc., (referred to as Bel Sales U.S.A. in the complaint), pursuant to a factoring contract referred to in the complaint, a copy of which was attached to the stipulations. Other than this factoring business, there is no indication of any contact of defendant Chemical Bank with Ohio or Ohio residents. Beltron Sales U.S.A., Inc., is a California corporation; whereas, Chemical Bank is a New York corporation, and the factoring agreement was negotiated and executed entirely outside Ohio.

It is further stipulated that:

"* * * Beltron Sales U.S.A., Inc., ad-

vised Gold Circle of the assignment of the invoices to Chemical Bank-Dommerich Division and instructed Gold Circle to make payments thereon directly to Chemical Bank-Dommerich Division. * * * Chemical Bank-Dommerich Division did not communicate directly with Gold Circle."

The so-called Long-Arm Statute, R.C. 2307.382(A), provides in pertinent part, as follows:

"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state; * * *."

The parties expressly stipulated that defendant Chemical Bank does not contract to supply services or goods in Ohio, so that the only possible basis for an Ohio court to exercise personal jurisdiction over defendant Chemical Bank would be a finding that the entering into the factoring agreement and accepting the benefits thereunder, including payments of Ohio accounts receivable, constitutes the transacting of business in Ohio.

Although not stressed by the parties, under the factoring agreement with Bel Sales, defendant Chemical Bank received title to the merchandise, especially returned merchandise, as well as to the accounts receivable. Paragraph one of the factoring agreement provides in pertinent part as follows:

"We agree to do all our business through you as our sole factor. The undersigned hereby assigns and sells to you as absolute owners all accounts * * * and other forms of obligations * * * now existing or hereafter created. The undersigned represents and warrants that all receivables are and will be at the time of assignment to you bona fide and existing obligations of its customers arising out of the sale of goods and/or the rendition of services by the undersigned in the or-

dinary course of its business * * *. You hereby purchase from the undersigned, without recourse to the undersigned, except as set forth hereinafter, all of said receivables acceptable to and approved by you. * * * The undersigned further sells, assigns and transfers to you all of its title and/or interest in the goods represented by receivables and in all such goods that may be returned by customers and all its right of stoppage and transit, replevin and reclamation and as an unpaid vendor and/or lienor. Any goods so recovered shall be treated as returned goods, and shall be set aside, marked with your name and held for your account as owner. The undersigned shall notify you promptly of all such returned goods."

The second paragraph of the agreement provides in part as follows:

"* * * The amount and terms of each sale to a customer of the undersigned shall be submitted to you for your approval in writing, and no sale or deliveries shall be made without such written approval, which may be withdrawn at any time before actual delivery of the merchandise or rendition of the services."

Thus, defendant Chemical Bank had an interest in both tangible and intangible property in Ohio since an indebtedness due from a resident to a nonresident constitutes property within the resident's state. See *Pennington* v. *Fourth National Bank of Cincinnati* (1917), 243 U.S. 269. However, the mere presence of property in a state does not establish a sufficient relationship between the owner of the property and the state to support the exercise of jurisdiction over an unrelated cause of action. See *Shaffer* v. *Heitner* (1977), 433 U.S. 186.

As stated in the first paragraph of the syllabus of *Wainscott* v. *St. Louis-San Francisco Ry. Co.* (1976), 47 Ohio St. 2d 133 [1 O.O.3d 78], in order for an Ohio court to exercise *in personam* jurisdiction over a foreign corporation, such corporation must have "certain minimum contacts with Ohio such that it is fair that a

defendant defend a suit brought in Ohio and that substantial justice is done." *Wainscott* relied upon *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310. In *Shaffer, ·supra,* at pages 203-204, quoting from *International Shoe,* the court stated:

"Thus, the inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was 'present' but on whether there have been 'such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' * * * Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness: 'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. * * *' "

The *International Shoe* test was reaffirmed recently in *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, and *Rush* v. *Savchuk* (1980), 444 U.S. 320. In *World-Wide,* it is stated in the opinion at page 297:

"'* * * it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * * The Due Process Clause, by ensuring the 'orderly administration of the laws,' * * * gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

In *Rush,* it is stated at page 328:

"'* * * the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is a contact between the defendant and the forum, and it may suggest the presence of other ties. * * * Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.*"

Defendant Chemical Bank's contacts are not limited to the purchase of a single existing accounts receivable owed by an Ohio resident. Rather, defendant Chemical Bank is engaged in the business of purchasing existing and future accounts receivable owed by debtors both in Ohio and other states. With respect to the matter at hand, defendant Chemical Bank purchased the receivable prior to the sale of the merchandise by Bel Sales to plaintiff. In fact, as required by the agreement, presumably, defendant Chemical Bank approved in writing "the amount and terms of" the sale by Bel Sales to plaintiff prior to consummation of the sale. In addition, Bel Sales' title to the goods involved in the sale was transferred to defendant Chemical Bank when the receivable was created and assigned. In addition, Bel Sales was required to indicate on all bills and invoices that the "receivable has been assigned to and is owned by and payable" to defendant Chemical Bank. In addition, the notation was required to indicate that "any objections to this bill or its terms" must be reported to defendant Chemical Bank. As noted above, the factoring agreement specifically prohibited Bel Sales from making any sale or delivery of merchandise without prior written approval of defendant Chemical Bank. Both title to the merchandise sold and the right to receive the purchase price in full immediately are assigned to defendant Chemical Bank upon consummation of the sale. Thus, defendant Chemical Bank's involvement in the transaction was much greater than that of an assignee of an existing account receivable. Since the agreement provided for a "commission" of thirty percent to defendant Chemical Bank,

essentially, Bel Sales made sales for the benefit of defendant Chemical Bank up to seventy percent of the purchase price, payable at the latest when collected. In short, the factoring agreement made defendant Chemical Bank's involvement in the sale no less than that of Bel Sales, except that such involvement was not necessarily revealed to the customer prior to delivery of the merchandise.

Here, there are sufficient additional contacts beyond the purchase of an existing account receivable to make it reasonable to require defendant Chemical Bank to defend an action in Ohio when the action involves the sale transaction; namely, recovery of the purchase price paid to defendant Chemical Bank for unsold goods returned pursuant to the sale agreement, title to which goods is in defendant Chemical Bank. In other words, with respect to the particular transaction, and actions involving it, defendant Chemical Bank's contacts are essentially the same as those of Bel Sales. Defendant Chemical Bank was directly involved with Bel Sales in the sale of the merchandise. Accordingly, we find no due process impairment in the exercise of jurisdiction by the common pleas court in this case.

There remains, however, whether the Ohio Long-Arm Statute provides for the exercise of jurisdiction under the circumstances involved. This must depend upon whether the conduct of defendant Chemical Bank constitutes transacting business in Ohio. Defendant Chemical Bank did not directly assume any obligation to plaintiff with respect to the sale of the merchandise. On the other hand, defendant Chemical Bank became entitled to all of the benefits of the vendor with respect to such sale. Bel Sales' title to the merchandise was assigned to defendant Chemical Bank. It also acquired all rights to receive the purchase price for the merchandise, as well as all right and title to any returned merchandise. Most importantly, defendant Chemical Bank acquired

the right to determine whether the sale of the merchandise to plaintiff would be consummated. Under the terms of the factoring agreement, the sale could not take place unless defendant Chemical Bank gave its written consent. Under the totality of these circumstances, defendant Chemical Bank was so involved in the sale of the merchandise to plaintiff that it may properly be deemed to have been transacting business in Ohio so as to subject it to the jurisdiction of Ohio courts with respect to this transaction. Upon the evidence before it, the trial court erred in dismissing plaintiff's complaint for lack of personal jurisdiction over defendant Chemical Bank. The assignment of error is well taken.

While plaintiff has contended that certain rights and jurisdiction have been created by R.C. 1309.37, those issues are not properly before us at this time, inasmuch as they pertain to the merits of plaintiff's claim, rather than to the issue of jurisdiction of the trial court over defendant Chemical Bank.

For the foregoing reasons, the assignment of error is sustained; and the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

REILLY, J., concurs.

MCCORMAC, J., dissents.

MCCORMAC, J., dissenting. The trial court correctly dismissed the complaint for lack of personal jurisdiction over Chemical Bank. Chemical Bank did not transact any business in Ohio within the meaning of Civ. R. 4.3(A)(1) (R.C. 2307.382[A][1]). Chemical Bank entered into a factoring agreement with Beltron Sales outside Ohio in which it acquired an interest in an indebtedness owed Beltron by the Ohio plaintiff, Gold Circle Stores.

While pursuant to its factoring agreement with Beltron, Chemical Bank had certain controls over the activities of Beltron in relation to Gold Circle, the Ohio purchaser, all of those transactions took place outside the state of Ohio. The majority has improperly expanded the words, "transacting any business in this state" to include transacting any business in another state which affects the transaction of business in Ohio. The unequivocal fact is that Chemical Bank did not transact business in Ohio. Chemical Bank simply entered into a financing or factoring agreement with Beltron in another state by which it acquired an interest in property located in Ohio concerning which Beltron transacted business in Ohio. The financing or factoring agreement did not make Chemical Bank the alter ego of Beltron, to be considered as Beltron for the purpose of being amenable to personal jurisdiction in the state of Ohio. Beltron, the party who did transact business in Ohio, was and is subject to personal jurisdiction in Ohio. Chemical Bank did not render itself subject to personal jurisdiction in Ohio by entering into a factoring agreement with Beltron and enforcing contractural rights over Beltron, all in another state, even though there was a direct effect upon Beltron's activities in Ohio.

The judgment of the trial court should be affirmed.