OHIO STATE TIE & TIMBER, INC., APPELLEE, *v.* PARIS LUMBER COMPANY ET AL., APPELLANTS.

(No. 82AP-211—Decided December 30, 1982.)

*Schottenstein, Hoffman & Fry Co., L.P.A., Mr. Carl B. Fry, Mr. Barry A. Waller* and *Mr. Rick L. Brunner,* for appellee.

*Messrs. Greenbaum, Doll & McDonald, Mr. Richard A. Getty* and *Mr. James R. Cox,* for appellants.

WHITESIDE, P.J. Defendants, Paris Lumber Company and its partners, appeal from a decision of the Franklin County Court of Common Pleas and raise three assignments of error, as follows:

"1. The trial court erred in finding that the Defendants-Appellants had sufficient minimum contacts with the State of Ohio to warrant the exercise of personal jurisdiction over them in Ohio.

"2. The trial court erred in failing to hold an evidentiary hearing to resolve factual issues with respect to the existence and terms of an alleged settlement agreement.

"3. The trial court erred in finding that the parties had entered into a binding settlement agreement."

Plaintiff, Ohio State Tie & Timber, Inc., brought this action seeking judgment against defendants for lumber products sold and delivered to defendant Paris Lumber in a series of transactions between November 1978 and March 1980. All defendants filed a motion to quash service of process and dismiss the action for lack of jurisdiction over their persons, which motion was overruled by the trial court.

Defendant Paris Lumber is a Kentucky general partnership engaged in the lumber business in Paris, Kentucky. The individual defendants, partners in Paris Lumber, are also residents of Paris, Kentucky.

In support of their motion to quash, defendants submitted affidavits indicating that: (1) all negotiations connected with the sales involved were conducted by telephone and were delivered by plaintiff to defendant Paris Lumber's place of business in Kentucky; (2) defendant Paris Lumber has never transacted or solicited business in Ohio, and is not authorized to do business in Ohio; and (3) defendant Paris Lumber has no office or place of business in Ohio, has no employees or agents in Ohio, owns no property in Ohio and has never derived any revenue from Ohio. The affidavits indicate that the same is true with respect to the individual defendants.

Plaintiff submitted an affidavit of its president, which does not differ substantially from that of defendants, stating that: (1) the contact between the parties was initiated by defendant Paris Lumber by telephone and that plaintiff was persuaded to enter into a transaction with defendant Paris Lumber; (2) all transactions were negotiated and entered into by telephone, being instigated in each instance by defendant Paris Lumber, which offered to purchase materials from plaintiff; and (3) upon receipt of the telephone order, plaintiff accepted it, manufactured the requested products to defendants' specification and caused the requested goods to be shipped to defendant Paris Lumber in Kentucky.

The trial court overruled defendants' motion to quash, finding "defendants have had sufficient minimum contacts with the State of Ohio to create personal jurisdiction in this Court," without further elucidation as to the nature of these contacts other than citing *Southern Machine Co.* v. *Mohasco Industries* (C.A. 6, 1968), 401 F. 2d 374. In *Southern Machine Co., supra,* the Sixth Circuit Court of Appeals held that entering into a contract and causing a party to set in motion steps to begin to manufacture machines in contemplation of marketing them creates a sufficient impact on the commerce or economy of the state of manufacture that physical presence in the state is not necessary to permit the exercise of jurisdiction over the nonresident party to the contract. This is merely an attempted extension of the due-process doctrine underlying the exercise of so-called

long-arm jurisdiction, which is the progeny of *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, which was relied upon in *Wainscott* v. *St. Louis-San Francisco Ry. Co.* (1976), 47 Ohio St. 2d 133 [1 O.O.3d 78]. In *Wainscott,* it was held, in paragraph one of the syllabus, that, for an Ohio court to exercise *in personam* jurisdiction over a foreign corporation, the corporation must have "certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done." In two more recent authoritative cases, *International Shoe Co.* was reaffirmed. See *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, and *Rush* v. *Savchuk* (1980), 444 U.S. 320.

In *World-Wide,* it is stated at page 297:

"* * * it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * * The Due Process Clause, by ensuring the 'orderly administration of the laws,' * * * gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (Citations omitted.)

*Rush,* at page 328 states that: "* * * jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.* " Under that fairness standard, it is extremely doubtful that defendants had sufficient contacts with Ohio to satisfy due process. However, even if there are such sufficient contacts, this is not dispositive of this case. Recently, in cases such as *Southern Machine Co., supra,* a doctrine has evolved that due process is satisfied by the transaction of business in one state which affects the transaction of business in another state to such a degree as to cause a significant impact on the commerce of the affected state through contracts with residents of that state such that there should be a reasonable anticipation of being sued in the affected state. Under this doctrine, it is not necessary that the business itself be transacted in the state asserting jurisdiction but only that there be a contract with the residents of the state asserting jurisdiction, which contract has a significant impact on the commerce and business operations in the state asserting jurisdiction.

Recently, this court, in *Gold Circle Stores* v. *Chemical Bank* (1982), 4 Ohio App. 3d 10, held to the effect that Ohio has not extended long-arm jurisdiction to the limits of due process but, instead, actual transaction of business in Ohio is a prerequisite to the exercise of long-arm jurisdiction under the curcumstances. This conclusion is compelled by Civ. R. 4.3(A), which permits service of process outside of Ohio upon a nonresident only under certain specified circumstances, including "[t]ransacting any business in this state," and "[c]ontracting to supply services or goods in this state." Since the goods involved were supplied by an Ohio resident to a Kentucky resident in Kentucky, the second foundation for jurisdiction can have no application. The only possible basis for the exercise of long-arm jurisdiction in this case is a transaction of business in this state by defendants. Thus, the basic issue is whether the activity of defendants constituted transacting business in this state.

R.C. 2307.382(A), the so-called long-arm statute, contains almost identical provisions to those in Civ. R. 4.3(A). The ordering of goods from an Ohio resident by telephone from Kentucky by a Kentucky resident, which goods are to be shipped to Kentucky by the Ohio resident does not constitute the transaction of business in Ohio by the Kentucky resident who ordered the goods, even though the goods had to be specially prepared to meet the needs of the Kentucky resident. This follows even if it could be found that

such a transaction is of such a nature as to create an impact on Ohio commerce. Under the Ohio rule, the issue is not whether the transaction created an impact on Ohio commerce but, instead, whether the nonresident transacted business in Ohio. Accordingly, the trial court erred in finding there to be sufficient contacts with Ohio to permit the exercise of long-arm jurisdiction by the trial court within the limitations of the Ohio statute and rule. However, whether such error is prejudicial depends upon the resolution of the remaining two assignments of error.

Even though the trial court initially erroneously exercised jurisdiction, the continued pursuit of this action and the entering into a settlement agreement in connection with this action would confer jurisdiction upon the trial court, not with respect to the merits of the controversy but with respect to the enforcement of the settlement agreement. In other words, even where there is a contest as to jurisdiction, the parties may settle the controversy both as to the merits and the jurisdictional issue and enter into a settlement agreement which may be enforced by the trial court. See *Holland* v. *Holland* (1970), 25 Ohio App. 2d 98 [54 O.O.2d 175]. As indicated in *Holland*, if the settlement be an in-court settlement and is entered into the record of the proceedings, the settlement may be enforced against the party, even though one of the parties later attempts to repudiate the agreement.

Here, however, there was no such in-court settlement. In fact, the record is completely devoid of any indication of any activity in this case between the time the trial court ruled on a motion to compel discovery in October 1981 and the entry of judgment pursuant to a purported settlement between the parties on February 18, 1982. Shortly after the entry of that judgment, defendants filed a motion to set aside the judgment entry, and it is only in connection with that motion that any evidence was presented as to what occurred with respect to the purported settlement. The record further reflects that the notice of appeal from the February judgment was timely filed and that the trial court subsequently overruled the motion to set that judgment aside, but, even in connection therewith, without conducting an evidentiary hearing.

The trial court's judgment entry states in part, as follows:

"The Court's having been informed that this matter had been settled and further informed of the terms of the settlement * * * which terms the Court finds to be fair, reasonable and equitable, but that said Defendants now refuse to abide by such settlement and have made no payments thereon, this Court, upon its own motion, hereby grants judgment for Plaintiff and against Defendants * * *."

Since the record is devoid of any indication of an in-court settlement as was involved in *Holland, supra,* the trial court erred in granting a judgment upon its own motion without conducting an evidentiary hearing as to the existence, as well as the terms, of settlement. See, also, *Bolen* v. *Young* (1982), 8 Ohio App. 3d 36. Merely being informed of a settlement, even if by counsel, is an insufficient basis for the granting of a judgment upon a purported settlement in the absence of any formal indicia, such as a written stipulation of the existence of the settlement by the parties. This is true, even if counsel represents to the trial court that the settlement has been made since counsel has no implied authority to settle a case. In this regard, it must be borne in mind that here the trial court attempted to enter judgment in favor of one party purportedly pursuant to an agreement between them and is to be distinguished between a circumstance where the trial court may dismiss an action without prejudice because of a representation of settlement which never reaches fruition. As expressly stated in the second paragraph of the syllabus of *Moor* v. *Crouch* (1969), 19 Ohio St. 2d 24

[48 O.O.2d 43]: "An attorney who is without special authorization has no implied or apparent authority, solely by virtue of his general retainer, to compromise and settle his client's claim or cause of action." Nor is there any indication that defendants have accepted the fruits of the judgment or ratified the action of their attorney as was involved in *Julier* v. *Julier* (1900), 62 Ohio St. 90, and *Shaw* v. *Chell* (1964), 176 Ohio St. 375 [27 O.O.2d 348]. See, also, *Haluka* v. *Baker* (1941), 66 Ohio App. 308 [20 O.O. 136].

Subsequent to the granting of judgment, plaintiff filed an affidavit of one of its attorneys indicating that a trial had been scheduled, but that one week prior thereto the parties, through counsel, seriously discussed settlement and reached a tentative agreement, including "final terms of settlement," which are reflected in certain exhibits attached to a memorandum filed in support of plaintiff opposing the setting aside of the judgment. Not only was this affidavit not before the trial court when it entered the judgment, but the affidavit itself sets forth no indication that the settlement was agreed to by the defendants themselves other than to refer to a letter to defendants from their counsel, forwarding the documents to them, with the inclusion of the statement, "With some minor revisions, I think the document can be executed." This letter in and of itself clearly suggests that the settlement was not finalized as to terms since "minor revisions" were needed and, further, that the settlement had not yet been authorized by defendants themselves. Accordingly, even if this evidence had been before the trial court, there would be no predicate for enforcement of a settlement agreement. Reduced to its simplest terms, a settlement agreement is a contract. The party asserting the contract (settlement agreement) must prove by a preponderance of the evidence the existence of the elements of the contract, including offer, acceptance and consideration both as to the existence of the contract and as to its terms. Here, plaintiff has furnished no such proof. Accordingly, to this extent, the third assignment of error is well-taken.

Likewise, the second assignment of error is well-taken since an evidentiary hearing is necessary under the circumstances of this case in order to resolve the dispute between the parties as to the existence and terms of the alleged settlement agreement.

Under the circumstances, it is not at this time possible to resolve the first assignment of error with certainty. If there be no settlement agreement between the parties, the first assignment of error would be well-taken, and the trial court would have no jurisdiction to proceed further. If, on the other hand, the parties had entered into a settlement of this case, the trial court has jurisdiction to determine the existence and terms of that settlement agreement and to enforce it by judgment since it would constitute a contract in settlement of a pending Ohio case, even though jurisdiction be disputed. The entering into the settlement agreement constitutes a waiver of the defense of lack of jurisdiction and a consent to jurisdiction solely for the purpose of enforcement of the settlement agreement in the absence of some provision in the agreement itself to the contrary. Therefore, there has been no prejudicial error demonstrated as of yet with respect to the first assignment of error.

For the reasons stated above, the first assignment of error is conditionally overruled, and the second and third assignments of error are sustained; the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court with instructions to conduct an evidentiary hearing to determine whether or not the parties have entered into a binding settlement agreement with respect to this case and, dependent upon the factual findings, to enter

judgment accordingly in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded with instructions.*

NORRIS and GUERNSEY, JJ., concur.

GUERNSEY, J., of the Third Appellate District, sitting by assignment in the Tenth Appellate District.