**MIAMI PAPER CORPORATION,**
Plaintiff,

v.

**MAGNETICS, INC., Defendant.**

No. C–3–83–1158.

United States District Court,
S.D. Ohio, W.D..

March 2, 1984.

John O. Henry, Walter Reynolds, Dayton, Ohio, for plaintiff.

John R. Gall, Columbus, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS FOR LACK OF *IN PERSONAM* JURISDICTION; FURTHER PROCEDURES SET

RICE, District Judge.

Plaintiff, a corporation doing business in Ohio, filed this breach of contract action against Defendant, a Maryland corporation, in the Montgomery County (Ohio) Court of Common Pleas. Defendant removed the action, pursuant to 28 U.S.C.

**54**

§ 1446(a), to this Court as a diversity suit under 28 U.S.C. § 1332. Shortly thereafter, Defendant moved (doc. # 4) to dismiss the Complaint for lack of *in personam* jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). For the following reasons, the Court overrules the motion.

## I. FRAMEWORK

An initial review of the legal standards applicable to the pending motion will aid in understanding the legal and factual issues involved therein.

■ Defendant claims, under Rule 12(b)(2), that this Court has no personal jurisdiction over it. In this diversity action, the Court must apply the "long arm" statute of the forum state, Ohio Rev.Code § 2307.382 (Page 1981), to determine if personal jurisdiction over Defendant is proper. *National Can Corp. v. K. Beverage Co.,* 674 F.2d 1134, 1136 (6th Cir.1982); *Poyner v. Erma Werke GMBH,* 618 F.2d 1186, 1187 (6th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

■ Plaintiff argues that *in personam* jurisdiction may be had over Defendant, based on provisions of the Ohio long arm statute. Ohio Rev.Code § 2307.382 provides, in pertinent part, that:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state....

The Sixth Circuit has held that this statute is intended to extend the personal jurisdiction of courts to the constitutional limits of due process. *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 225 (6th Cir.1972) *(In-Flight Devices).*[1]

In defining these constitutional limits, the Supreme Court has held that the Defendant must have certain "minimum contacts" with the forum state, so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (citing, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ). The Sixth Circuit has developed a three-part test to determine whether the application of the Ohio long arm statute provides sufficient contact between a non-resident defendant and the forum state so as to support personal jurisdiction.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Welsh v. Gibbs,* 631 F.2d at 440; *In-Flight Devices,* 466 F.2d at 226.

---

**1.** Defendant has filed a supplemental memorandum (doc. # 15) without leave of the Court, *cf.* S.D.Ohio 4.0.2, but the Court will consider same in the interests of completing the record. In that memorandum, Defendant, citing *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.,* 8 Ohio App.3d 236, 456 N.E.2d 1309 (Franklin Cty. 1982); *Culp v. Polytechnic Institute,* 7 Ohio App.3d 352, 455 N.E.2d 698 (Franklin Cty.1982); *Gold Circle Stores v. Chemical Bank-Dommerich Division,* 4 Ohio App.3d 10, 446 N.E.2d 194 (Franklin Cty.1982), suggests that Ohio courts are adopting the view that the Ohio long-arm statute is *not* meant to extend to the limits of due process. The cited cases do indeed appear

to adopt that view, and concentrate on whether or not the non-resident defendant was "transacting any business" in Ohio. However, that view is by no means unanimous. *See Barile v. University of Virginia,* 2 Ohio App.3d 233, 441 N.E.2d 608 (Cuyahoga Cty.1981) (following Sixth Circuit view). More importantly, this Court need not follow the views of *lower* Ohio court decisions, until and unless the Ohio Supreme Court adopts their position or the Sixth Circuit repudiates its interpretation of the Ohio Long-Arm statute. *See Winston Corp. v. Continental Cas. Co.,* 508 F.2d 1298, 1304 (6th Cir.), *cert. denied,* 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975).

Once challenged, a plaintiff has the burden of demonstrating the propriety of *in personam* jurisdiction over a defendant. *First National Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir.1982) (per curiam); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974). If a court decides to determine the issue solely on the basis of the pleadings and materials attached thereto, the plaintiff need only make a *prima facie* case of jurisdiction. *Welsh v. Gibbs*, 631 F.2d at 438. If the moving party submits affidavits, the non-moving party may not rest upon allegations or denials in his pleadings, but must respond, by affidavit or otherwise, to set forth specific facts showing that the court has jurisdiction. *Weller v. Cromwell Oil Co.*, 504 F.2d at 930. Finally, if the Court concludes that the written submissions raise issues of credibility or disputed issues of fact which require resolution, the Court may conduct a preliminary evidentiary hearing, where the Plaintiff must show, by a preponderance of the evidence, that jurisdiction exists. *Welsh v. Gibbs*, 631 F.2d at 439.

In this case, Defendant has supported its motion by affidavits, and Plaintiff has relied, in response, upon affidavits and other verified materials. The Court will now turn to the facts gleaned from these materials.

## II. FACTUAL BACKGROUND

A review of the record reveals the following facts. Plaintiff is a Minnesota corporation doing business in Ohio, a manufacturer of paper, with its principal place of business in West Carrollton, Ohio. Defendant, a Maryland corporation with its principal place of business in Baltimore, Maryland, processes, finishes, and sells paper and paper products. Defendant has never maintained an office or facility in Ohio and keeps no records and owns no property in Ohio. Since January of 1980, Defendant's

sales to persons in Ohio have averaged about 2% of its total sales, and Defendant's purchases from Ohio during that period have been about 5.3% of total purchases, with virtually all such purchases being made from Plaintiff. Nevertheless, Defendant acknowledges that it has carried on business with Plaintiff for (apparently) several years. During May and June of 1982, for example, Defendant bought paper (directly) from Plaintiff, and sent its own trucks to West Carrollton on at least seven occasions to pick up the paper during that period.

The arrangements during 1983, however, were somewhat different. Defendant dealt with Plaintiff through Schmidt Paper Company, a broker of paper supplies based in Burnsville, Minnesota. Schmidt quoted a price for Plaintiff's paper to Defendant, and Defendant arranged with Schmidt for shipments of paper to Defendant's Maryland plant, reaching over 16,000 tons in 1983. While the product was shipped in Schmidt packages, Defendant understood that Plaintiff was the source of the paper. Defendant paid Plaintiff by periodically sending a check to a lock-box established by Plaintiff in Chicago, Illinois. Each of the invoices for the 23 shipments during this period indicate that the shipments were made "F.O.B. West Carrollton, Ohio."[2] Later in 1983, the parties terminated their relationship, and Plaintiff sued for breach of contract, alleging that Defendant owed it some $216,885.67 in unpaid monies for about 433 tons of paper sold and delivered to Defendant.

With this much, the parties agree. However, the parties disagree on the significance of the F.O.B. designation on the 32 invoices for 1983. By way of affidavit, Defendant's president, George Katz, avers that the shipments were, in effect, F.O.B. Maryland, since the president of Schmidt

---

**2.** The "F.O.B. Seller's Place of Business" term means that title passes to the buyer upon delivery to a carrier of the goods, and the risk of loss also passes to the buyer at that time. F.O.B. Buyer's Place of Business means that title and risk of loss remains with the seller until the

goods actually reach the buyer. *See* J. White & R. Summers, Uniform Commercial Code 179–180 (2d ed. 1980). The significance of these designations in the instant case is discussed at greater length in the text, *infra*.

told him that the price of the paper included the delivery charge, and that Schmidt or Plaintiff would bear any risk of loss. Schmidt further told him, he states, that the F.O.B. West Carrollton "notations were made for Miami Paper's recordkeeping purposes only, and that they should be disregarded." George Katz affidavit, ¶ 4, attached to doc. # 11. At this Court's suggestion (doc. # 13), Plaintiff has responded with affidavits from a Miami Paper vice-president and Schmidt's president. The former affiant states (with exhibits) that *all* shipments from Plaintiff to Defendant have *always* been F.O.B. West Carrollton, that Defendant did indeed assume the risk of loss upon delivery to the carrier, and that Schmidt's president is only an "independent broker," never having been designated as an agent of Plaintiff with authority to waive or modify F.O.B. terms. Schmidt never asked for or received such authority. The latter affiant denies making the statements attributed to him by Defendant's president, and also states that it "is customary and standard in the paper industry that all shipments are sold 'F.O.B. mill' and risk of loss passes to the buyer at that point." Stanley Schmidt affidavit, doc. # 14, ex. B, ¶ 4.

Plaintiff argues that, for two reasons, this Court should ignore the statements in the Katz affidavit: (1) Katz improperly relates hearsay in his affidavit (i.e. the statements of Schmidt), and (2) even assuming those hearsay statements are admitted *and* taken as true, nothing in Katz' affidavit (or anywhere else in the record) suggests that Schmidt had any authority to change F.O.B. terms. The Court agrees with Plaintiff that the Katz statements may be disregarded, though for different reasons. It is not entirely clear if Defendant is relying on the Schmidt statements for their hearsay value (i.e., for the truth of the matters asserted therein), or simply on the statements having been made, without regard to their truth or falsity. *Cf.* Fed.R. Evid. 801(c).

■ In any event, the Court finds it unnecessary to definitively characterize the statements in the Katz affidavit, or to undertake a procedure to resolve the inconsistencies between the Katz and Schmidt affidavits. Defendant nowhere disputes Plaintiff's position that Schmidt was not an agent of Plaintiff, and had no authority to waive the F.O.B. terms or any other contract term. Whether or not Schmidt made the statements is irrelevant, since it is undisputed that he had no authority to waive F.O.B. terms or other contract terms. Thus, even assuming, without deciding, that Stanley Schmidt made the statements attributed to him by George Katz, Defendant was not warranted in attributing them to Plaintiff. Given Schmidt's acknowledged status as an independent broker, whether or not Schmidt misrepresented certain facts to Defendant has little, if any, bearing on Defendant's relationship to Plaintiff. This is particularly true, since Defendant concedes that it knew that the paper shipments were coming directly from Plaintiff. Accordingly, the Court finds it unnecessary to resolve the factual conflicts between the Schmidt and Katz affidavits. *See In-Flight Devices,* 466 F.2d at 223 n. 1 (factual conflicts irrelevant to jurisdictional question need not be resolved).

## III. ANALYSIS

The Court now applies the above undisputed facts to the three-part test for determining the propriety of asserting *in personam* jurisdiction over Defendant.

### A. PURPOSEFUL ACTIVITY/CAUSING A CONSEQUENCE

■ The first part of this circuit's test requires that the defendant "purposefully avail himself of the privilege of acting in the forum state *or* causing a consequence in the forum state." (emphasis added). Defendant argues that it meets neither part of this disjunctive test, alleging that it only acted in Ohio through Schmidt, and only conducted a minimal amount of business in Ohio. Defendant is incorrect on both positions.

First, it is true that, at least for the disputed transactions, Defendant only acted in Ohio through Schmidt, the middle-

man. But that does not detract from Defendant acting, albeit indirectly, in Ohio. Indeed, this concept is embodied in the Ohio long-arm statute, which states that a defendant can act "directly or by an agent...." Thus, courts have been willing to predicate jurisdiction on a defendant having "acted" in or upon the forum state through an agent or middleman. *See, e.g., Chattanooga Corp. v. Klingler*, 704 F.2d 903, 907–08 (6th Cir.1983); *Priess v. Fisherfolk*, 535 F.Supp. 1271, 1279 (S.D.Ohio 1982) (Spiegel, J.). *See also*, Comment, *Constitutional Limitations on State Long Arm Jurisdiction*, 49 U.Chi.L.Rev. 156, 165–68 (1982) [hereinafter cited as *Chicago Comment*].[3]

Second, Plaintiff does not dispute Defendant's assertions that it has conducted only a small portion of its *nationwide* business in Ohio. That argument, however, incorrectly focuses on the non-resident's *overall* contacts with the forum state, rather than the nature of the transaction giving rise to the cause of action. Thus, in a case factually similar to the instant one, the Sixth Circuit held that a non-resident defendant, which had contracted with an Ohio plaintiff for the latter to manufacture $200,000 worth of equipment, met the "causing a consequence" test:

[Defendant entered into a contract] involving a substantial order for the manufacture of goods with a firm which it necessarily knew was based in Ohio and had its production facilities located within that State. That the making (and breaking) of a contract with the Plaintiff would have substantial consequences with the State of Ohio is a reality of which Defendant could not have been ignorant.

*In-Flight Devices*, 466 F.2d at 227. Similar consequences obtain herein. Defendant admits that it knew that Plaintiff was the source of the paper, despite the presence of a broker. The particular dispute in question covered some 433 tons of paper and over $216,000, which is surely a "substantial consequence" within the state of Ohio, in light of *In-Flight Devices*.[4]

Finally, Defendant relies (Reply Memorandum, doc. # 11, pp. 4–5) on a line of cases, notably *Lakeside Bridge & Steel Co. v. Mountain St. Construction Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (*Lakeside Bridge*), which have been unwilling to assert jurisdiction over a non-resident buyer, based merely on the buyer having contracted with the resident seller. This approach, however, clearly conflicts with the Sixth Circuit's three-part test in general, and with *In-Flight Devices* in particular.[5] *In-Flight Devices* held that the "intentional entering of a contract to be

---

**3.** The instant case is distinguishable from a case relied upon by Defendant, *Wessel Co., Inc. v. Yoffee & Beitman Management Corp.*, 457 F.Supp. 939, 941 (N.D.Ill.1978), wherein the court was unwilling to predicate jurisdiction over a non-resident buyer who acted through an agent. In that case, unlike the instant matter, the defendant was merely a customer for a single sale from plaintiff negotiated by the agent, and which only involved telephone and letter contacts with the forum state.

**4.** Defendant also argues that the *small amount* of total sales or revenue which it derives from Ohio is a factor to consider in determining whether or not it was "transacting any business" in Ohio. That argument, however, is best directed at those portions of the Ohio long-arm statute which predicate jurisdiction on a nonresident defendant "deriving substantial revenue" from Ohio. *See* Ohio Rev.Code § 2307.-382(A)(4)–(5) (Page 1981). Plaintiff, as noted above, does not rely upon those sections. At best, Defendant's argument should be considered under the third prong of the three-part test, that is, the overall reasonableness of asserting *in personam* jurisdiction. *See In-Flight Devices*, 466 F.2d at 227 n. 13.

**5.** *Lakeside Bridge* neither cited nor distinguished *In-Flight Devices*. However, other commentators have observed the conflict between the decisions. *See*, 445 U.S. 907, 910, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325 (1980) (White, J., dissenting from denial of certiorari in *Lakeside Bridge*); Note, *Long-Arm Jurisdiction in Commercial Litigation: When Is a Contract a Contact?*, 61 B.U.L.Rev. 375, 386 (1981); Note, *Lakeside Bridge & Steel Co. v. Mountain State Construction Co: Inflexible Application of Long-Arm Jurisdiction Standards to the Non-Resident Purchaser*, 75 Nw.U.L.Rev. 345, 354, 357–58 (1980). This Court, of course, must follow *In-Flight Devices*.

performed in Ohio," 466 F.2d at 228, met the first part of the three-part test. *See also, First National Bank, supra,* 680 F.2d at 1126. Thus, the narrow view found in *Lakeside Bridge* and related cases has no application in this Circuit.

For these reasons, the Court concludes that the initial prong of the three-part test is met.

## B. CAUSE OF ACTION ARISING FROM ACTIVITIES

■ The second part of the analysis requires that Plaintiff's cause of action arise from Defendant's activities in Ohio. That Plaintiff meets this test is self-evident. "Defendant's transaction of business in Ohio—its entering of a contractual relationship with an Ohio corporation—is necessarily the very soil from which the action for breach grew." *In-Flight Devices,* 466 F.2d at 229. *See also, Chicago Comment* at 172–73. In this case, the alleged breach of contract (failure to pay for delivered paper) arises from the contract with the Ohio corporation. Thus, the cause of action does arise from Defendant's activities in Ohio. *See generally, Berning v. BBC, Inc.,* 575 F.Supp. 1354 (S.D.Ohio 1983).

## C. REASONABLENESS INQUIRY

■ The final part of the three-part test requires the Court to determine if the acts or consequences caused by the defendant "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." While the "very flexibility" of this inquiry precludes the application of "definitive standards," *In-Flight Devices,* 466 F.2d at 232, among the factors to consider are Ohio's interest in the controversy, and whether the defendant buyer was (1) "active" or "passive", (2) could foresee a foreign suit, and (3) had physical contacts with

the forum state. *Id.* at 232–35; *First National Bank,* 680 F.2d at 1126. The Court will consider these factors seriatim.

It is settled, of course, that a state "has an interest in resolving a suit brought by one of its residents." *In-Flight Devices,* 466 F.2d at 232.

> That interest necessarily becomes more significant when, as here, a contract calling for substantial production of goods is entered into, with the production of goods and other performance under the contract to take place entirely within the forum state.

*Id.* In the instant case, it is likewise undisputed that the contract(s) in question called for a "substantial production of goods" within the state of Ohio.[6]

It is also evident that Defendant should be characterized as an "active" rather than a "passive" buyer. Defendant itself acknowledges that it initiated dealings with Plaintiff (through Schmidt, the broker), and was not merely a "passive" buyer receiving goods from a virtually unknown seller. Under these facts, any reluctance to assert jurisdiction over passive, non-resident buyers falls away. *See In-Flight Devices,* 466 F.2d at 232–33.

The facts also indicate that Defendant should not have been greatly surprised at the contingency of being brought into an Ohio court to defend its actions. A principal basis for this conclusion is the F.O.B. notations on the invoices covering the transactions in question. Under the relevant provisions of the Uniform Commercial Code (UCC), *see* Ohio Rev.Code §§ 1302.32, 1302.42, 1302.53 (Page 1979) [UCC §§ 2–319, 2–401, 2–509], the "F.O.B. West Carrollton" notations on the invoices indicate that title and risk of loss to the paper passed to Defendant, in Ohio, once they were given to the carrier to be taken to

---

**6.** As Defendant points out in its supplemental memorandum, Plaintiff is, in fact, a Minnesota corporation, only doing business in Ohio. However, given the presence of Plaintiff's manufacturing facility in Ohio, this forum state surely retains an interest in those persons (corporate or natural) working in the state. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 314, 101 S.Ct.

633, 640, 66 L.Ed.2d 521 (1981). *Cf. Chicago Comment* at 172–73. This is not a case of a non-resident plaintiff using the state only as a forum for tactical advantage. *E.g., Keeton v. Hustler Magazine, Inc.,* 682 F.2d 33 (1st Cir. 1982), *cert. granted,* 459 U.S. 1169, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983).

Maryland. *See* footnote two, *supra.* In effect, Defendant owned the goods while they were still in Ohio. As several courts have held, an appropriate F.O.B. term places a non-resident buyer on notice that its goods are in another state and that it might be haled into court in that state to resolve a dispute over those goods. *See Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583, 588–89 (2d Cir.1965); Comment, *Risk of Loss and State Long Arm Jurisdiction: Obligations Fashioned by the Delivery Term in an Article 2 Sales Contract,* 17 Hous.L.Rev. 573, 597–613 (1980) [hereinafter cited as *Houston Comment* ].

Defendant vigorously argues that the F.O.B. designation should not be the sole, controlling jurisdictional factor. This Court agrees. Indeed, most courts consider the F.O.B. term to be only one factor, among several, to be relevant for jurisdictional purposes. *See, e.g., Lakeside Bridge,* 597 F.2d at 604 n. 14; *NRM Corp. v. Pacific Plastic Pipe Co.,* 36 Ohio App.2d 179, 304 N.E.2d 248 (Summit Cty.1973); *Houston Comment* at 605–09. *See also, In-Flight Devices, passim* (by implication).[7] Nevertheless, the "F.O.B. Seller" terms weigh in favor of asserting jurisdiction over Defendant, particularly where, as here, relatively large purchases were involved. Unlike the individual, "passive" consumer of one product, a commercial buyer during several transactions at F.O.B. seller's terms is in a position, at least in theory, to negotiate to alter those terms, or take steps to lessen its potential liability

(e.g., procure insurance).[8] *Chicago Comment,* at 178–79. Moreover, the record indicates that Defendant is engaged in multistate activities (i.e., it has facilities in both Maryland and Pennsylvania, Katz affidavit, ¶ 6), which should further place it on notice of the possibility of conducting out-of-state litigation. *In-Flight Devices,* 466 F.2d at 234.

Plaintiff acknowledges that the final factor, physical contacts with the forum state, weighs in Defendant's favor, since Defendant had no such contacts with Ohio for the specific transactions at issue in this lawsuit. Defendant, however, *did* have physical contacts in Ohio in the prior year, when it sent trucks to pick up Plaintiff's paper. Those *prior* contacts have *some* relevance to the present dispute, since they also place Defendant on notice that it may be sued out-of-state. *Id.; Chicago Comment* at 178. In any event, physical contact is not a *prerequisite* to the assertion of jurisdiction by the forum state:

> in an appropriate case the entering of a contract to be performed within the forum state may provide sufficient basis for the assertion of jurisdiction over a non-resident defendant without the physical presence of such defendant or his agents within the state.

*In-Flight Devices,* 466 F.2d at 235.

Considering all of the relevant factors, the Court concludes that the exercise of jurisdiction over the Defendant would be reasonable.

---

**7.** Plaintiff relies, in part, upon *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1974), a case which was apparently willing to place virtually controlling importance on the F.O.B. terms. As Defendant correctly points out, *Colony Press* has been considered of little precedential value, since the Illinois Supreme Court in 1981 narrowed its interpretation of the Illinois long-arm statute. *See U.S. Reduction Co. v. Amalgamet, Inc.,* 545 F.Supp. 401, 403 (N.D.Ill.1982). That revelation, however, is of little aid to Defendant, since this Court follows the majority rule in considering the F.O.B. terms to be only one of several relevant factors.

**8.** As the *In-Flight Devices* court pointed out, 466 F.2d at 234 n. 24, a non-resident buyer can

entirely eliminate the prospect of out-of-state litigation by insisting on a contractual choice-of-forum clause. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 453 N.E.2d 683 (1983).

In its supplemental memorandum, Defendant also argues that Ohio is not a convenient forum for the resolution of this action. However, such an argument, pertinent to a change-of-venue motion under 28 U.S.C. § 1404(a), is not relevant to the question of *in personam* jurisdiction. *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 270–71 (S.D.Ohio 1981); *Chicago Comment* at 162.

## IV. CONCLUSION

For the reasons outlined above, the Court overrules Defendant's motion to dismiss. As the Court noted in its earlier entry (doc. # 10), appropriate discovery can now go forward after receipt of this entry. In addition, Defendant is directed to answer or otherwise motion the Plaintiff's Complaint within 20 days after receipt of this entry.