**STEELCRAFT SERVICE CO., INC., Plaintiff,**

**v.**

**ENSECO CORP., Defendant.**

**Case No. C–1–92–862.**

United States District Court, S.D. Ohio, W.D.

March 5, 1993.

Susan Grogan Faller, Frost & Jacobs, Cincinnati, OH, for plaintiff.

Rick David DeBlasis, Lerner, Sampson & Rothfuss Co., Cincinnati, OH, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's Motion to Dismiss (doc. 5), the Affidavit of Tully V. Latessa (doc. 6), the Plaintiff's Response (doc. 7), and the Defendant's Reply (doc. 8).

The issue before the Court is whether this Court has personal jurisdiction over the Defendant.

## BACKGROUND

The Defendant, Enseco Corporation ("Enseco"), is an Illinois corporation with its principal place of business in Illinois. The Plaintiff, Steelcraft Service Company, Inc. ("Steelcraft") is a Delaware Corporation which operates in Ohio.

Over a period of approximately seven years, Enseco ordered millions of dollars worth of steel doors from Steelcraft. Enseco placed orders for Steelcraft's doors via telephone, mail, and fax. Steelcraft sent the steel doors to Enseco "FOB Cincinnati, Ohio." This term meant that in the transactions between Enseco and Steelcraft, title to the steel doors passed to Enseco in Ohio. In other words, the risk of loss passed to Enseco as soon as the goods left Steelcraft's factory.

Furthermore, at the invitation of Steelcraft, the President of Enseco visited Steelcraft in Ohio one time for the purpose of touring the Steelcraft's factory.

## DISCUSSION

 The federal courts have only limited jurisdiction. A federal court must have jurisdiction over the subject matter and the parties involved before it can consider the merits of a case. *See* Charles Alan Wright, *The Law of the Federal Courts* § 7 (4th ed. 1983); Martin Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* (2d ed. 1990). The party asserting jurisdiction bears the burden of proof. *Reliance Elec. Co. v. Luecke*, 695 F.Supp. 917, 919 (S.D.Ohio 1988) (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1982)).

In determining whether this Court has personal jurisdiction over Enseco, we must apply the law of the forum state—in this case, the law of Ohio. *See Gen. Acquisition, Inc. v. Gencorp. Inc.*, 766 F.Supp. 1460, 1485 (S.D.Ohio 1990). The applicable Ohio law is Ohio's Long Arm Statute, Ohio Rev.Code § 2307.382 (1992) and Civ.R. 4.3. If a defendant's conduct falls under the reach of Ohio law, then we must make sure that the application of Ohio law does not violate constitutional safeguards. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991).

We now turn to the Ohio Long Arm Statute. The Ohio legislature has expansively defined when a court has personal jurisdiction over a defendant:

(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting business in this state ...

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev.Code § 2307.382. Under the statute, a "person" includes a corporation. *Id.* at § 2307.381.

[3] In interpreting the "[t]ransacting business" clause, courts should construe the Ohio Long Arm Statute to the constitutional limits of personal jurisdiction. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224–25 (6th Cir.1972). Therefore, if a non-resident Defendant, such as Enseco, has sufficient contacts with Ohio that the exercise of jurisdiction will not offend constitutional stan-

dards of due process, then this Court may assert jurisdiction. *See id.*

In *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir.1968), the Sixth Circuit set forth a three-part test for determining whether personal jurisdiction may be exercised in compliance with the requirements of due process:

> [f]irst, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381; *Welsh*, 631 at 440 (reaffirming the three-part test of *Mohasco* ). Still, a court should not apply the *Mohasco* test woodenly; rather, a court should take into account the particular facts and circumstances of each case. *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 295 (6th Cir. 1964).

We now must apply the three-part test of *Mohasco* to the case before the Court.

### Purposeful Availment

■ The first—and perhaps most important—requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," but rather only when a defendant itself has "create[d] a 'substantial connection with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citation to quotation omitted). Purposeful availment is a murky requirement that has been frequently litigated.

■ If a defendant enters into a substantial contract to be performed in a foreign state, then the defendant has purposefully availed itself to the foreign state's jurisdiction. In *In–Flight*, the defendant entered into a contract involving the manufacture of goods. The defendant knew that the plaintiff manufactured the goods in Ohio which were involved in their contract. In light of these facts, the *In–Flight* court held that "[t]he making of a substantial business contact with a corporation based in another jurisdiction has been held to be adequate to satisfy the requirements of the 'purposeful' test. . . ." *In–Flight*, 466 F.2d at 227; *see also Mohasco*, 401 F.2d at 374 (defendant purposefully availed itself to Tennessee law where a defendant entered into a licensing agreement which required machines to be manufactured and marketed in Tennessee).

The case before the Court presents a similar fact pattern. Enseco entered into numerous contracts with Steelcraft over the course of seven years. Because Enseco's president toured Steelcraft's factory, Enseco must have known that Steelcraft was manufacturing the steel doors in Ohio which Enseco had requested. Therefore, under *Mohasco* and its progeny, we hold that Enseco purposefully availed itself to Ohio law.

### Arising from the Defendant's Activities

The inquiry under *Mohasco* is not over, however. *See id.* at 227 n. 13 ("[t]he intentional entering into a contract relationship with a resident of the forum is an important, but not necessarily decisive, factor in the overall evaluation of jurisdictional propriety"). Consequently, we turn our attention to the second test announced in *Mohasco*.

Under this test, the plaintiff's cause of action must arise from the defendant's activities in the forum state. In the case before the Court, Steelcraft's breach of contract claim arises from its contract with Enseco. Steelcraft's performance of its contract with Enseco would take place in Ohio. *See In–Flight*, 466 F.2d at 229 ("Defendant's transaction of business in Ohio—its entering of a contractual relationship with an Ohio corporation—is necessarily the very soil from which the action grew"). *Accord Miami Paper Corp. v. Magnetics, Inc.*, 591 F.Supp. 52, 58 (S.D.Ohio 1984) ("the alleged breach of contract ... arises from the contract with the Ohio corporation. Thus, the cause of action does arise from Defendant's activities in Ohio").

A hypothetical example is illustrative. John Doe, of Toledo, is hurt by an exploding

soda pop bottle manufactured by Enseco. John Doe sues in Ohio and claims that Ohio courts have jurisdiction because, in another part of its business, Enseco purchased steel doors from Steelcraft. In this hypothetical case, an Ohio court should not assert jurisdiction, because John Doe's cause of action does not arise out of Enseco's contacts with Ohio. In contrast, in the case pending before this Court, Steelcraft's cause of action over Enseco's alleged breach of contract does arise out of Enseco's contracts to be performed in Ohio.

### The Reasonableness of Exercising Jurisdiction

■ Finally, we turn to the third test of *Mohasco*. Under this test, the defendant's actions or the consequences caused by the defendant's actions must have a sufficient connection with the forum state to make it reasonable for a court to exercise jurisdiction. This third test of *Mohasco* is the slipperiest to apply, and has led to a certain amount of uncertainty in the law.[1] Nevertheless, the third test also gives a court the flexibility to examine the equities of exercising jurisdiction over a defendant in each case. It serves as a lucid illustration of the tension between certainty and fairness in the law. *See* Carol M. Rose, *Crystals and Mud in Property Law*, 40 Stan.L.Rev. 577 (1988) (describing the courts' conflicting desires to provide bright-line rules and to be fair to each litigant).

Courts have examined a number of factors in determining whether asserting jurisdiction is reasonable. In *In–Flight*, the Sixth Circuit first examined the state of Ohio's interest in resolving the case within its boundaries. *In–Flight* noted that the state of Ohio has an interest in resolving lawsuits initiated by Ohio residents. *In–Flight*, 466 F.2d at 232. The court further noted that the state of Ohio's interest is heightened when a non-

resident contracts with an Ohio resident for a substantial amount of goods which are to be manufactured in Ohio. *Id.; see also Mohasco*, 401 F.2d at 385 ("when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted"). Similarly, in the case before this Court, Ohio has an interest in resolving the dispute because the case involves a substantial order of goods from an Ohio corporation.

The *In–Flight* court also considered whether the defendant was "active" or "passive" in its involvement in the transaction at issue. The court noted that:

> [a] purchaser who engages in an essentially one state operation—and occasionally buys an item or two out of state, for instance, is far more likely to be unprepared to deal with out of state litigation than an individual or corporation whose business frequently involves him or it in interstate transactions.

*In–Flight*, 466 F.2d at 233–34. In the case before the Court, we know that Enseco purchased millions of dollars worth of steel doors from Steelcraft over the course of seven years. Enseco's contract with Steelcraft was not a discrete transaction; rather, Enseco and Steelcraft had a continuing relationship. Enseco should have realized that it was having a substantial impact on commerce in Ohio over the years.

*In–Flight* further considered the financial wherewithal of the defendant to litigate out of its home state. *Id.* at 234. The case before the Court appears to involve two relatively small businesses. As a result, we do not find any more hardship in having Enseco litigate in Ohio, than in forcing Steelcraft to litigate in Illinois. From the facts presented

---

1. The uncertainty in the law is illustrated by the apparent conflict between the decision in *In–Flight* and *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236, 456 N.E.2d 1309 (Franklin Cty.1982). In *In–Flight*, the court held that jurisdiction in Ohio was reasonable where a Minnesota corporation entered into contract negotiations involving a substantial order of goods from an Ohio corporation. By contrast, in *Paris*, the defendant was a Kentucky partnership which contracted with an Ohio corporation to supply various lumber products. The *Paris* court held that Ohio courts could not exercise jurisdiction because the defendant had not transacted business in Ohio.

We note, however, that much of the uncertainty in this area of the law can be eliminated by inserting a choice-of-forum clause in the contract between the two parties.

to this Court, we do not believe this factor is conclusive for either the Plaintiff's or the Defendant's position.

The *In–Flight* court finally considered the nature and quality of the defendant's physical contacts within the forum state. The court stressed that no magical amount of physical contacts guarantees that a court has jurisdiction. In *In–Flight,* the court held that several visits by various officers by the defendant was enough "to provide a clue to the significance attached by the defendant to the activities occurring within the forum state—and thus a clue as to his expectations." *Id.* at 235.

In the case before the Court, the Defendant Enseco's physical contacts with Ohio have been even sparser than the defendant in *In–Flight.* Enseco mailed, telephoned, and faxed orders to Steelcraft in Ohio. Enseco's president once visited Steelcraft's Ohio factory. Standing alone, however, these physical contacts are probably insufficient to give this Court jurisdiction over Steelcraft.

Finally, courts have considered whether the defendant is the legal owner of the goods in the forum state. The *Miami Paper* court noted that the defendant purchased goods "FOB Ohio" in its multiple contracts with the plaintiff. The *Miami Paper* court observed that although the "FOB Ohio" term was not dispositive:

> [i]n effect Defendant owned the good while they were still in Ohio. As several courts have held, an appropriate FOB term places a non-resident buyer on notice that its goods are in another state and that it might be haled into court in that state to resolve a dispute over those goods.

*Miami Paper,* 591 F.Supp. at 59. Analogously, Enseco purchased its steel doors from Enseco "FOB Ohio," and therefore was on notice that it might be sued in Ohio over those steel doors.

In considering all these factors as a whole, we are convinced that this Court reasonably may exercise jurisdiction over Enseco. Over the course of seven years, Enseco ordered millions of dollars of steel doors from Steelcraft, an Ohio business. As a result of Enseco's orders, Steelcraft manufactured these doors, thus affecting Ohio's economy. Finally, Enseco became the owner of these doors the moment they left the grounds at Steelcraft's factory. In light of these facts and the law of this Circuit, we conclude that we have personal jurisdiction over the Defendant.

## CONCLUSION

Accordingly, the Defendant's Motion to Dismiss is denied.

SO ORDERED.