WAINSCOTT, APPELLEE, *v.* ST. LOUIS-SAN FRANCISCO RY. CO., APPELLANT.

[Cite as Wainscott v. St. Louis-San Francisco Ry. Co. (1976), 47 Ohio St. 2d 133.]

(No. 75-863—Decided July 21, 1976.)

*Messrs. Steer, Strauss, White & Tobias* and *Mr. F. Bruce Abel,* for appellee.

*Messrs. Dinsmore, Shohl, Coates & Deupree, Mr. Thomas S. Calder* and *Mr. Gerald V. Weigle, Jr.,* for appellant:

CORRIGAN, J.

### I.

The appellant maintains that the question of what corporate activities in this state are sufficient to support a finding, that a foreign corporation has the minimum contacts with Ohio necessary to sustain personal jurisdiction therein, is a substantive constitutional question; and, that the personal service of process provisions of Civ. R. 4.2(6) cannot be interpreted to abridge substantive constitutional rights. Appellant maintains further that, under the facts existing in the present case, the decision of the Court of Appeals, subjecting appellant to the *in personam* jurisdiction of the Ohio courts, violates the due-process clause of the Fourteenth Amendment to the United States Constitution.

This court, in *Perkins* v. *Benguet Consolidated Mining Co., supra* (158 Ohio St. 145), held that federal due process neither prohibited nor compelled the taking of jurisdiction by state courts in an action against a foreign corporation;

where the cause of action did not arise in that state or relate to the corporation's activities therein. Paragraphs one and two of the syllabus, in *Perkins,* read:

"1. Federal due process neither prohibits nor compels the taking of jurisdiction by the courts of a state in an action against a foreign corporation where the cause did not arise in that state or relate to the corporation's activities therein. (Paragraph one of the syllabus in the case of *Perkins* v. *Benquet Consolidated Mining Co.,* 155 Ohio St. 116, overruled.)

"2. Where jurisdiction is not limited by statute to causes of action arising within this state, an action on a transitory cause may be maintained in the courts of this state by a nonresident against a foreign corporation doing business here, although the cause did not arise here or relate to the corporation's business transacted here."

The Court of Appeals, in the present case, determined that, since Civ. R. 4.2(6) did not limit service to causes of action arising within this state, the absence of a relationship between the present cause of action and such business as the corporation transacted in Ohio posed no impediment to constitutional service of process on a foreign corporation. The Court of Appeals, therefore, felt it was unnecessary, under *Perkins,* to decide whether the appellant was transacting business in Ohio. We disagree.

## II A.

Civ. R. 4.2(6) provides for service of process "[u]pon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation by certified mail at any of its usual places of business; or by serving an officer or a managing or general agent of the corporation."

Civ. R. 4.2(6) does not specify what activities within the state of Ohio constitute minimum contact for the purpose of establishing the personal jurisdiction of Ohio courts over foreign corporations. The opinion of the Court of Appeals in this cause states, in effect, that because Civ. R. 4.2(6) does not limit service to causes of action arising

within this state and because the rule was complied with, *i. e.*, service upon the corporation or its officers, managing or general agents at its usual places of business, there is no constitutional impediment to personal jurisdiction over the appellant corporation. The clear import of the opinion is to equate service of process with *in personam* jurisdiction.

*II B(1).*

Since the landmark decision of the United States Supreme Court, in *Pennoyer* v. *Neff* (1877), 95 U. S. 714, it has been an established principle that a judgment rendered pursuant to the *in personam* jurisdiction of a state court over a nonresident is entitled to full faith and credit only if it satisfies the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution; and, if such a judgment over a nonresident does not meet the requirements of the due-process clause, it is not properly enforceable even within the state which rendered it.

The requirements of the due-process clause can be stated simply: There must be sufficient service of process such as to be reasonably likely to communicate the fact of the commencement of an action to a nonresident; and, there must be some nexus between the forum for the action and the nonresident so as to make it fair and reasonable for the nonresident to appear in that forum and defend the action. *McDonald* v. *Mabee* (1917), 243 U. S. 90; *International Shoe Co.* v. *Washington* (1945), 326 U. S. 310.

In the present case, the sufficiency of process has not been challenged, and it is clear that the serving of notice upon the appellant's agents in Ohio was reasonably likely to, and did, communicate notice to the appellant of the commencement of the present suit.

The sole issue is whether it is fair and reasonable for the appellant to appear and defend this action in the courts of Ohio.

The question of the *in personam* jurisdiction of state courts over foreign corporations has troubled courts for many years. The principle established in *Pennoyer* in dealing with the personal jurisdiction of courts over individ-

uals was that, in order to give such proceedings any validity, the defendant "* * * must be brought within its [the court's] jurisdiction by service of process within the state, or by his voluntary appearance." (95 U. S., at page 733.) This derivation of the rule was explained by Justice Holmes in *McDonald* v. *Mabee, supra* (243 U. S. 90, 91), to be based upon the theory that "[t]he foundation of jurisdiction is physical power * * *."

The problem raised in dealing with foreign corporations resulted from language by Mr. Chief Justice Taney in *Bank of Augusta* v. *Earle* (1839), 38 U. S. 519, 588, to the effect that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created.

These principles originally developed in cases involving personal jurisdiction over individuals, and were difficult to apply in suits involving foreign corporations. Various fictions arose which spoke in terms of a corporation's citizenship, domicile, consent or presence. Three principal theories evolved to deal with the corporate form of business which was becoming an increasingly more common method of carrying on economic activity.

*II B(2).*

The first theory rested upon the idea that a foreign corporation can transact business in a state other than the state of its creation, only with the consent, express or implied, of that state. *Lafayette Ins. Co.* v. *French* (1855), 59 U. S. 404. This idea that a foreign corporation may do business in a state only with the state's permission provided the basis for the holding that, in respect to litigation arising out of the corporation's transactions in the state, the state will accept as sufficient the service of process on its agents or persons specifically designated and that the corporation shall so stipulate and that this stipulation may be express or implied by virtue of the corporation's activities within the state. *St. Clair* v. *Cox* (1882), 106 U. S. 350, 356.

*II B(3).*

The second doctrine which arose rejected the notion that a corporation could not exist beyond the limits of the state which created it. In *Philadelphia & Reading Ry. Co.*

v. *McKibbin* (1917), 243 U. S. 264, 265, Mr. Justice Brandeis stated:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. * * *"

The presence doctrine, unlike the consent theory, would sustain jurisdiction against corporations on claims which did not arise out of the business done within the state.

Under both the consent and the presence theories it became necessary to determine whether the foreign corporation was "doing business" within the state whose jurisdiction was invoked. The number of decisions as to what constituted "doing business" multiplied and the courts drew fine lines of distinction between various corporate activities. See *Hutchinson* v. *Chase & Gilbert* (C. A. 2, 1930), 45 F. 2d 139, and cases cited therein at pages 141-142.

The multiplicity of often contradictory decisions on the question of what constituted "doing business" gradually replaced the existing theories. Thus, courts held that, if a corporation was "doing business" within a jurisdiction, then jurisdiction over the corporate defendant existed, but, if the corporation was not "doing business" within the jurisdiction, then no jurisdiction existed.

For a general discussion of the development of *in personam* jurisdiction see Kurland, The Supreme Court, The Due Process Clause and The In Personam Jurisdiction of State Courts—From *"Pennoyer"* to *"Denckla"*: A Review, 25 U. Chi. L. Rev. 569 (1958).

The decisions arising under the "doing business" test for determining state *in personam* jurisdiction over foreign corporations are so numerous that it becomes necessary to classify them according to the particular activities engaged in by the corporations subjected to suit, the purpose for which the suit was brought, and, in some cases, the nature of the foreign corporation.

In the present case, the only activities conducted by the

appellant corporation in Ohio are the maintenance of offices in Cleveland and Cincinnati and the employment of agents for the purpose of soliciting business over the appellant's out-of-state lines.

## II B(4).

The prevailing view under the decisions based upon the "doing business" standard was that the mere solicitation of business in a state by agents of a foreign corporation did not constitute doing business therein so as to render the corporation amenable to the jurisdiction and process of the courts in the state. *People's Tobacco Co.* v. *American Tobacco Co.* (1918), 246 U. S. 79; *International Harvester Co.* v. *Kentucky* (1914), 234 U. S. 579; *Green* v. *Chicago, Burlington & Quincy Ry. Co.* (1907), 205 U. S. 530.

This view came to be known as the "mere solicitation" doctrine.

In *Green* v. *Chicago, Burlington & Quincy Ry. Co.*, *supra,* the United States Supreme Court applied this doctrine to a foreign railway corporation, holding that the company was not doing business nor present within the state so as to make it amenable to the jurisdiction and process of the courts therein by merely soliciting business in such state for its lines without the state, even though the railway company maintained an agency for such purpose. The court stated that, although the business of soliciting passengers and freight outside the area covered by the railway company's lines was probably essential, it was incidental and collateral to the main purpose of the company. The agents of the C., B. & Q. Railway Company occasionally exchanged bills of lading for goods received by the initial rail lines and routed over the C., B. & Q. lines, but only on the condition that the bills of lading would not be in force until the freight had actually been received by the C., B. & Q. Railway Company. The railway company's agents sold no tickets and received no payments for transportation of freight.

The facts, in *Green*, are apposite to those in the case at bar. The appellant, herein, maintains that *Green* is dispositive of the present case since no activity in Ohio occurred

other than the solicitation of business to be carried on over appellant's out-of-state lines.

The problem presented in this case arises from the decision of the United States Supreme Court in *International Shoe Co.* v. *Washington, supra* (326 U. S. 310). The court, in *International Shoe*, described the various fictions inherent in the doctrines of presence and consent and the problems associated with the application of the "doing business" standard. While the court did not establish definite criteria for determining when a state's *in personam* jurisdiction over a foreign corporation could be invoked, it did displace the doctrines of consent and presence as constitutional grounds for *in personam* jurisdiction.

The court held, at page 316, that:

"* * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The court, citing from Judge Hand's opinion in *Hutchinson* v. *Chase & Gilbert, supra* (45 F. 2d 139), explained, at pages 316-317, that:

"* * * the terms 'present' and 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

The court, in *International Shoe*, recognized the line of cases holding that, where the activities of a corporation have not only been systematic and continuous but also give rise to the liabilities sued on; then jurisdiction exists. The court also recognized that casual or isolated activities in a

state on a corporation's behalf are not enough to subject it to suit on causes of action unconnected with those activities, because due process would bar the imposition of so great and unreasonable a burden upon the corporation as to require it in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities.

More importantly, the court recognized, citing, *inter alia, Green* v. *Chicago, Burlington & Quincy Ry. Co., supra* (205 U. S. 530), that, in some cases, continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity, whereas, in others, continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings distinct from those activities.

The court, in *International Shoe*, recognized the existence of the conflicting lines of cases and overruled neither. Rather, the court distinguished them on the basis of certain very general criteria. The court's explanation of these criteria was stated, at page 319, as follows:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. *St. Louis S. W. R. Co.* v. *Alexander, supra* [227 U. S.], 228; *International Harvester Co.* v. *Kentucky, supra,* 587. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. *Cf. Pennoyer* v. *Neff, supra; Minnesota Commercial Assn.* v. *Benn,* 261 U. S. 140.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare *International Harvester Co.* v. *Kentucky, supra,* with *Green* v. *Chicago, B. & Q. R. Co., supra,* and *People's Tobacco Co.* v. *American Tobacco Co., supra* [246 U. S. 79]. Compare *Connecticut Mutual Co.* v. *Spratley, supra* [172 U. S.] 619, 620, and *Commercial Mutual Co.* v. *Davis, supra* [213 U. S. 245], with *Old Wayne Life Assn.* v. *McDonough, supra* [204 U. S. 8]. See 29 Columbia Law Review 187-195."

In *International Harvester Co.* v. *Kentucky, supra* (234 U. S. 579, 586), the Supreme Court distinguished *Green* (205 U. S. 530) from that case on the basis that the facts in *Green* presented an extreme case where the defendant carried on no other business except the solicitation of traffic for the defendant's out-of-state lines. The court, in *International Harvester,* stated that it had no desire to depart from the *Green* decision.

The opinion in *International Shoe* (326 U. S. 310) makes it clear that the quality and nature of the activity conducted within a state in a given case must be viewed in relation to the fair and orderly administration of the laws. In other words, the circumstances of each case must be looked at to determine whether there exist certain minimum contacts with the forum state so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In refusing to overrule *Green,* the court reaffirmed its view that the facts in *Green* failed to establish sufficient minimum contacts so as to make it fair for the defendant to defend a suit in the forum state and to satisfy the requirement that substantial justice be done.

## III.

Applying the guidelines set out in *International Shoe*

to the present case, it is clear that the appellant's sole activity in Ohio is, as in *Green,* the "mere solicitation" of business for the defendant's out-of-state lines. Appellant's obligations in Ohio are limited to the payment of personal property tax. The appellant owns no real property or bank accounts in Ohio and its agents perform no business-related functions in Ohio except the solicitation of orders for freight traffic over its out-of-state lines.

More importantly, the cause of action in this suit arose from a railroad-crossing accident occurring in Missouri and not from any business-related activity in Ohio. An "estimate of the inconveniences" which would result to the appellant and the effect upon the orderly administration of justice is also relevant to this determination. The necessity of a view of the scene of the accident and the cost of transportation of witnesses to Ohio are also factors to be considered in deciding whether Ohio should invoke jurisdiction in this matter. The appellant corporation resides in Missouri, and a forum is available in Missouri for the exercise of the appellee's rights. The only substantial contact this action has with the state of Ohio is the fact of the appellee's residence here.

We do not think that minimum contacts exist between the appellant corporation and the state of Ohio such as to make it fair and reasonable for the appellant corporation to defend a suit in this jurisdiction.

It should be noted that the facts in *International Shoe* established more than mere solicitation of business. The defendant's salesmen in that case rented sample rooms and exhibited sample shoes in that state. Additionally, the cause of action sought to recover unpaid contributions to the state unemployment compensation fund and arose as a result of the defendant's activities within the state.

More recently, in *Hanson* v. *Denckla* (1958), 357 U. S. 235, decided upon different facts, the United States Supreme Court stated, at page 251:

"* * * But it is a mistake to assume that this trend [from early jurisdiction cases to *International Shoe*] her-

alds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigations. They are a consequence of territorial limitations on the power of the respective states. * * *''

This statement is particularly applicable to several federal cases involving foreign transportation companies wherein the courts held that any business-related activity constituted "doing business." *Lasky* v. *Norfolk & W. Ry. Co.* (C. A. 6, 1946), 157 F. 2d 674; *Cooke* v. *Kilgore Mfg. Co.* (N. D. Ohio E. D. 1952), 105 F. Supp. 733; *Huck* v. *Chicago, St. P., M. & O. Ry. Co.* (1958), 4 Wis. 2d 132, 90 N. W. 2d 154. Some courts, however, have applied the mere solicitation rule. *Kelley* v. *Delaware, L. & W. Ry. Co.* (C. A. 1, 1948), 170 F. 2d 195, certiorari denied, 336 U. S. 939; *Greek Tourist Agency* v. *Hellenic Mediterranean Lines Co.* (D. C. N. Y. S. D. 1961), 199 F. Supp. 6; *Hayman* v. *Southern Pacific Co.* (Mo. 1955), 278 S. W. 2d 749. Others have applied the "solicitation plus" rule. *Moore* v. *Atlantic Coast Line Ry. Co.* (D. C. Pa. E. D. 1951), 98 F. Supp 375; *Kirkland* v. *Atchison, Topeka & Sante Fe Ry. Co.* (1961), 104 Ga. App. 200, 121 S. E. 2d 411; *Elish* v. *St. Louis Southwestern Ry. Co.* (1953), 305 N. Y. 267, 112 N. E. 2d 842, rehearing denied (1953), 305 N. Y. 824, 113 N. E. 2d 561; *Dumas* v. *Chesapeake & Ohio Ry. Co.* (1960), 253 N. C. 501, 117 S. E. 2d 426.

On the basis of the guidelines established in *International Shoe*, it is the opinion of this court that the quality and nature of the activities conducted by the appellant in this case are insufficient, under the still-existent ruling in *Green*, to require the appellant to defend the present suit.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'Neill, C. J., Herbert, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.