[Cite as *Midwest Motor Supply Co., Inc. v. MRO Sys., L.L.C.*, 2025-Ohio-2411.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Midwest Motor Supply Company, Inc., | : | |
| Plaintiff-Appellant, | : | No. 24AP-698 |
| | | (C.P.C. No. 24CV-2705) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| MRO Systems, LLC, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 8, 2025

**On brief:** *Baker & Hostetler LLP, M.J. Asensio, Samuel E. Endicott, Mathew G. Drocton*, and *Mark C. Zronek*, for appellant. **Argued:** *Samuel E. Endicott.*

**On brief:** *Jackson Lewis PC, Robert D. Shank, Timothy C. Dougherty, Vincent J. Tersigni*, and *Jacob S. Kinder*, for appellee. **Argued:** *Robert D. Shank.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Plaintiff-appellant, Midwest Motor Supply Company, Inc. ("Kimball"), appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(B)(2) motion to dismiss filed by defendant-appellee, MRO Systems, LLC ("MRO"). For the reasons which follow, we reverse and remand the case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 3, 2024, Kimball filed a complaint in the trial court asserting claims against MRO for misappropriation of trade secrets, tortious interference with contractual relationships, and unfair competition. Kimball filed a first amended complaint on April 11, 2024, adding Robert Sapio, MRO's chief executive officer and owner, as a defendant.

{¶ 3} MRO is an Illinois-based company that is incorporated in Delaware. Its principal place of business is in Buffalo Grove, Illinois. Kimball is incorporated in Ohio and maintains a principal place of business in Franklin County, Ohio. The two companies are direct competitors in the maintenance, repair, and operations parts and supplies industry.

{¶ 4} This complaint arose from a situation in which MRO hired away eight Kimball employees. Kimball alleged that MRO misappropriated Kimball's Ohio trade secrets and confidential information through these former employees "for [MRO's] own financial benefit." (Apr. 11, 2024 First Am. Compl. at ¶ 8.) MRO allegedly used Kimball's trade secrets and confidential information to solicit Kimball's customers, including at least four in Ohio. *Id*. at ¶ 8, 20.

{¶ 5} On June 4, 2024, MRO filed a Civ.R. 12(B)(2) motion to dismiss Kimball's complaint for lack of personal jurisdiction. Attached to the motion as exhibits were declarations from the eight former Kimball employees, as well as Sapio. In its motion, MRO contended that there was no basis for asserting personal jurisdiction over MRO in Ohio. In support, MRO alleged that it does not transact significant business in Ohio and did not engage in any activities intended to cause harm to an Ohio resident. Furthermore, MRO argued that none of Kimball's former employees were precluded from soliciting customers in Ohio in their employment agreements, thus, any alleged solicitations in Ohio were unrelated to Kimball's claims. (June 4, 2024 Mot. to Dismiss at 2.)

{¶ 6} In his declaration, Sapio asserted that MRO does not have an office in Ohio but does have one employee in Ohio. *Id*., Ex. I at ¶ 8. Sapio claimed that MRO does not regularly conduct business in Ohio and does not derive a substantial amount of revenue from Ohio. *Id*. at ¶ 10, 11. MRO does not advertise in Ohio. *Id*. at ¶ 16. It has ten small customers in Ohio that purchase on an infrequent basis. *Id*. at ¶ 10. Finally, Sapio claimed that it would be a burden to litigate in Ohio due to out-of-state travel and disruption to business operations. *Id*. at ¶ 18.

{¶ 7} The declarations of Kimball's former employees that were hired by MRO were similar in nature. Each former employee asserted that they were not residents of Ohio and were not residents of Ohio when they were employed by Kimball. Their assigned geographic areas for Kimball were not in Ohio. Four former employees stated that they executed their Kimball employment agreements outside of the state of Ohio. Six asserted

that their travel to Ohio while employed with Kimball was limited to periodic meetings. One former employee stated that he occasionally traveled to Ohio to interview Kimball new hires. *Id.*, Ex. E at ¶ 11.

{¶ 8} Kimball filed a memorandum contra to MRO's motion to dismiss on June 18, 2024. Attached as an exhibit to Kimball's memorandum was an affidavit of Kimball's general sales manager, Steve Thompson. In its memorandum, Kimball asserted that MRO was subject to personal jurisdiction in Ohio because it "reached into Ohio and wrongfully acquired Kimball's trade secrets" by hiring Kimball's employees. (June 18, 2024 Memo Contra at 1.) Kimball alleged that MRO used these trade secrets to solicit Kimball's customers, resulting in a loss of business. It was also alleged that MRO has an employee and multiple customers in Ohio.

{¶ 9} Thompson's affidavit claimed that Kimball maintains numerous business functions in Columbus, Ohio, including: payroll, human resources, customer service, collection and finance, and electronic computer systems. (Thompson Aff. at ¶ 7.) Those computer systems contained trade secrets and other proprietary information that the former employees had access to during their employment with Kimball. *Id.* at ¶ 8, 9. The former employees traveled to Columbus for employee training, had their sales orders processed through Columbus, and initiated electronic communication with Kimball's Ohio office several times per week. *Id.* at ¶ 11, 13, 15, 24. Kimball executed their employment agreements at its Columbus office. *Id.* at ¶ 16. At least three of the former employees sold Kimball products to Ohio customers. *Id.* at ¶ 23. Thompson alleged that after MRO hired away Kimball's former employees, it assigned them to Kimball's customers. *Id.* at ¶ 21. It was further alleged that MRO targeted and solicited Kimball's customers, including their Ohio customers, using the information obtained from Kimball's former employees. *Id.* at ¶ 22. Thompson alleged that MRO, and at least one former employee, solicited at least four of Kimball's Ohio customers. *Id.* at ¶ 22. Thompson claimed that because of MRO's actions, Kimball lost sales and sale opportunities. *Id.* at ¶ 25.

{¶ 10} On June 25, 2024, MRO filed a reply in support of its motion to dismiss. Attached as an exhibit to its reply was a decision in case No. 2:22-cv-4049 in the United States District Court for the Southern District of Ohio, Eastern Division. In that decision, the judge dismissed, without prejudice, Kimball's claims against MRO for lack of personal

jurisdiction.  In its reply, MRO urged the trial court to follow the federal district court's jurisdictional analysis.

{¶ 11} Sapio filed a motion to dismiss the first amended complaint for lack of personal jurisdiction, pursuant to Civ.R. 12(B)(2), on September 9, 2024.  Kimball responded with a memorandum contra to Sapio's motion to dismiss on September 23, 2024.  On September 30, 2024, Sapio filed a reply memorandum in support of its motion to dismiss the first amended complaint.  MRO and Sapio subsequently filed a motion to stay discovery until the resolution of the pending motions to dismiss.

{¶ 12} On October 23, 2024, the trial court issued a decision and entry without a hearing, granting MRO's motion to dismiss.  The trial court reasoned that MRO did not purposefully avail itself of jurisdiction in Ohio and Kimball's causes of action did not arise from MRO's actions in Ohio.

{¶ 13} Kimball now brings this appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 14} Kimball assigns the following as trial court error:

> The trial court erred in granting Appellee's Motion to Dismiss
> for Lack of Personal Jurisdiction.

## III.  STANDARD OF REVIEW

{¶ 15} "Personal jurisdiction is a question of law that appellate courts review de novo."  *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27.  Upon a defendant's motion to dismiss, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  *Id.*, citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988).  "Conclusory statements or bare allegations alone are insufficient to establish personal jurisdiction."  *Morrison v. Taurus Internatl. Co.*, 2012 U.S. Dist. LEXIS 162036, *3 (S.D.Ohio Nov. 13, 2012), quoting *Murray v. Bierman, Geesing, Ward & Wood, L.L.C.*, 2012 U.S. Dist. LEXIS 139365, *4 (D.Md. Sep. 27, 2012).  If the court determines a Civ.R. 12(B)(2) motion to dismiss without an evidentiary hearing, "the plaintiff need only establish a prima facie showing of personal jurisdiction, which requires sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction."  *Austin Miller Am. Antiques, Inc. v. Cavallaro*, 2011-Ohio-6670, ¶ 7 (10th Dist.).  If the plaintiff establishes a prima facie case for personal jurisdiction, the trial court cannot dismiss the

complaint without holding an evidentiary hearing. *Benjamin v. KPMG Barbados*, 2005-Ohio-1959, ¶ 27 (10th Dist.). In resolving the motion, the court must view the allegations in the pleadings and the evidence in a light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor. *Kauffman Racing* at ¶ 27, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232 (1994).

{¶ 16} The issue of whether collateral estoppel applies in a particular case is a question of law which an appellate court reviews de novo. *State Bur. of Workers' Comp. v. Price*, 2023-Ohio-4395, ¶ 11 (10th Dist.). Collateral estoppel bars the relitigation of an issue that has actually and necessarily been litigated and determined in a prior case. *Id*. at ¶ 14. The elements of collateral estoppel under Ohio law are: "(1) the identical issue or fact was actually and directly at issue in a previous action; (2) the issue or fact was passed upon and determined by a court of competent jurisdiction; (3) the issue or fact was actually litigated, directly determined, and essential to the final judgment in the prior action; and (4) both actions involve the same parties, or their privies." *McCabe Corp. v. Ohio Environmental Protection Agency*, 2012-Ohio-6256, ¶ 19 (10th Dist.).

## IV. LEGAL ANALYSIS

{¶ 17} In its sole assignment of error, Kimball alleges that the trial court erred in granting MRO's motion to dismiss for lack of personal jurisdiction. The test for determining whether Ohio has personal jurisdiction over a non-resident is a two-step analysis. *Ricker v. Mercedes-Benz of Georgetown*, 2022-Ohio-1860, ¶ 13 (10th Dist.). First, the trial court must determine whether personal jurisdiction is conferred over a defendant by Ohio's long-arm statute and the rules of civil procedure. *Id*. Second, if the first step is met, the trial court must determine whether personal jurisdiction over the defendant comports with due process of law. *Id*.

{¶ 18} Pursuant to R.C. 2307.382(A) and the complementary Civ.R. 4.3, a trial court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct,

> or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state[.]

R.C. 2307.382(A)(3), (4), and (6); Civ.R. 4.3(A)(3), (4), and (9).  Ohio's state and federal courts disagree on whether Ohio's long-arm jurisdiction has been extended to the limits of federal law since it was amended in 2021.  *Angel's Dream, L.L.C. v. Toledo Jet Ctr., L.L.C.*, 721 F.Supp.3d 601, 609 (N.D.Ohio 2024).  When presented with the issue, Ohio state courts have declined to resolve it, and we decline to do so here.  *Id.*

{¶ 19} Initially, it should be noted that MRO contends that Kimball waived its argument that MRO was subject to personal jurisdiction under R.C. 2907.382(A)(3) because it did not assert that argument in the trial court.  However, a review of the pleadings below indicates that Kimball argued the applicability of R.C. 2307.382(A)(3). (June 18, 2024 Memo Contra at 5.)  Thus, Kimball did not waive that argument for purposes of appeal.

{¶ 20} In *Kauffman Racing*, 2010-Ohio-2551, at ¶ 41-44, the Supreme Court of Ohio found that Ohio's long-arm statute conferred personal jurisdiction on the defendant pursuant to R.C. 2307.382(A)(3) and (6).   In that case, the defendant, a Virginia resident, purchased an engine block from plaintiff, an Ohio company.  *Id.* at ¶ 2-3.  Eight months after purchasing the product, the defendant contacted plaintiff alleging that the engine block was defective.  *Id.* at ¶ 4.  After inspecting the product, plaintiff believed that defendant's post-purchase modifications to the engine block caused the defects and refused to purchase it back from defendant.  *Id.* at ¶ 5.  In response, defendant began posting disparaging comments about plaintiff on several websites devoted to automobile racing equipment.  *Id.* at ¶ 6.  Plaintiff filed a complaint against defendant for defamation and intentional interference with contracts and business relationships.  *Id.* at ¶ 20.  The trial court dismissed the complaint for lack of personal jurisdiction and the court of appeals reversed.  *Id.* at ¶ 20-21.  On appeal to the Supreme Court of Ohio, defendant argued that he never published the comments in Ohio and did not direct them toward Ohio.  *Id.* at ¶ 41. In rejecting defendant's argument, the court emphasized that there was evidence that at

least five individuals in Ohio saw the postings. *Id*. at ¶ 42. Furthermore, the court found that the defendant might reasonably have expected that plaintiff would have been injured in Ohio by making defamatory statements outside of Ohio. *Id*. at ¶ 44. Thus, the defendant was subject to Ohio's long-arm statute.

{¶ 21} MRO's Ohio contacts in this case are similar to those of the defendant in *Kauffman*. Based on the allegations contained in the complaint and Thompson's affidavit, MRO allegedly used trade secrets obtained from Kimball's former employees to solicit Kimball's customers, including at least four of its Ohio customers. Similarly, at least five individuals in Ohio saw the *Kauffman* defendant's defamatory internet posts. *Kauffman Racing* at ¶ 42. The case for personal jurisdiction here is arguably more compelling than the one in *Kauffman* because that defendant simply made posts online that could be seen worldwide. Here, Kimball's pleadings allege that MRO actually reached into Ohio and solicited at least four of Kimball's customers using stolen trade secrets and proprietary information. Furthermore, in *Kauffman*, the Supreme Court found that the defendant might have reasonably expected to cause injury in Ohio when he posted defamatory statements on the internet about an Ohio company. Similarly, MRO might have reasonably expected to cause injury in Ohio when it hired eight employees from a direct Ohio competitor and then used information from those individuals to solicit that competitor's customers.

{¶ 22} MRO argues that it is not subject to the Ohio long-arm statute because Kimball "merely" alleges that MRO hired Kimball's out-of-state employees to perform work outside of Ohio. (Appellee's Brief at 19.) MRO goes on to argue that it "undertook no jurisdictionally relevant conduct in Ohio." *Id*. at 23. However, MRO's argument ignores the allegations that it improperly used Kimball's trade secrets and proprietary information to solicit Kimball's customers, including at least four in Ohio. Kimball does not simply allege that MRO hired away its employees to work outside of Ohio. Kimball alleges that MRO used private information obtained from those former employees to solicit Kimball's out-of-state and Ohio customers.

{¶ 23} MRO does acknowledge Kimball's allegation that it solicited Kimball's Ohio customers but cites two cases for the proposition that mere solicitation of business is insufficient to establish personal jurisdiction. Those cases are distinguishable. First,

*Wainscott v. St. Louis-San Francisco Ry. Co.*, 47 Ohio St.2d 133 (1976) does not involve an analysis of Ohio's long-arm statute. Thus, it is inapplicable at this point in our analysis. Second, in *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2010-Ohio-28 (2d Dist.) there were no claims in the appellant's pleadings that the appellee engaged in any conduct in Ohio or that the conduct caused an injury in Ohio. *Id*. at ¶ 71. Here, Kimball specifically alleges that MRO solicited four of its Ohio customers and this resulted in lost sales and sale opportunities. (Thompson Aff. at ¶ 22, 25.) It should also be noted that, unlike in this case, *EnQuip* does not involve an analysis of R.C. 2307.382(A)(6).

{¶ 24} MRO also attempts to distinguish *Total Quality Logistics, L.L.C. v. Cornelius Leasing Systems, Inc.*, 2018 U.S. Dist. LEXIS 68106 (S.D.Ohio Mar. 13, 2018), which Kimball cites in support of its arguments. MRO contends that *Cornelius* is inapplicable because it involved an out-of-state defendant deliberately engaging in a scheme with an Ohio based employee of an Ohio company. However, those allegations do not appear to have played a factor in that court's decision. The court simply found that Ohio's long-arm statute applied because a non-resident defendant should reasonably have expected that an Ohio company would be injured by the disclosure of its confidential information. *Id*. at *12.

{¶ 25} Based on the foregoing, Kimball has made a prima facie showing that Ohio's long-arm statute reaches MRO in this matter.

{¶ 26} Moving to our due process analysis, for personal jurisdiction to exist, the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Questions of personal jurisdiction should not be determined by rigid guidelines "but should be evaluated on a case-by-case basis, considering the traditional notions of 'fair play' that define the parameters of 'due process.' " *Chrysler Corp. v. Traveleze Industries, Inc.*, 527 F.Supp. 246, 249 (E.D.Mich. 1981), quoting *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 236 (6th Cir. 1972).

{¶ 27} There are two types of personal jurisdiction, general and specific. *Ricker*, 2022-Ohio-1860, at ¶ 18 (10th Dist.). "General jurisdiction results from a defendant's 'continuous and systemic' contacts with a forum unrelated to the underlying action." *Id*., quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414-415 (1984).

Kimball does not argue that MRO is subject to general personal jurisdiction in Ohio. As such, we will limit our analysis to specific personal jurisdiction.

{¶ 28} Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " *Ford Motor Corp. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021), quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). For a court to exercise specific jurisdiction over a non-resident defendant, the plaintiff's claims must arise out of or are related to the defendant's contacts with the state. *Ricker* at ¶ 19. Specific jurisdiction exists where the defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.* at 472, quoting *Helicopteros Nacionales De Colombia* at 414.

{¶ 29} The question as to whether a court's exercise of personal jurisdiction comports with due process involves a three-prong test. *S. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). First, the defendant must purposefully avail themselves of acting in the forum state or causing a consequence in the forum state. *Id.* Second, the cause of action must arise from the defendant's activities there. *Id.* Third, the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Id.*

{¶ 30} With regards to the first prong of the analysis, a non-resident defendant purposefully avails itself of acting or causing a consequence in the forum state where it "deliberately . . . engaged in significant activities within a State," such that the defendant's own actions create a "substantial connection with the forum State" or create "continuing obligations between himself and residents of the forum." (Internal quotation marks deleted and citations omitted.) *Burger King Corp.* at 475-476. It is the quality of the contacts, not the number or their status, that are important when determining whether a non-resident purposefully avails themselves in the forum state. *Reynolds v. Internatl. Amateur Athletic Fedn.*, 23 F.3d 1110, 1119 (6th Cir. 1994).

{¶ 31} As previously stated, questions of personal jurisdiction are fact-specific inquiries that should be decided on a case-by-case basis. *Chrysler Corp.*, 527 F.Supp at 249, quoting *In-Flight Devices Corp.*, 466 F.2d at 236. A review of personal jurisdiction

case law reveals case-specific analyses, the results of which change when the facts change. *Carpenter v. S. Airways Express*, 2021 U.S. Dist. LEXIS 240151, *13-14 (S.D.Ohio Dec. 16, 2021).

{¶ 32} The necessity of a case-by-case analysis is readily apparent because each of the cases cited by both parties are distinguishable in significant ways. For example, MRO cites *Wainscott*, 47 Ohio St.2d, in support of its argument that mere solicitation in the forum state is insufficient to confer personal jurisdiction over a non-resident defendant. However, *Wainscott* involved a personal injury action filed in Ohio for damages sustained in a railroad crossing accident in Missouri. *Wainscott* at 134. The defendant in that case was a non-resident railroad company that had no tracks in Ohio but maintained two Ohio offices for the sole purpose of soliciting freight traffic for its out-of-state lines. *Id.* at paragraph 3 of the syllabus. Thus, the solicitations at issue in *Wainscott* were for business outside of the forum state. Here, Kimball alleges that MRO used Kimball's trade secrets to solicit business in the state of Ohio.

{¶ 33} MRO also cites *William F. Shea, L.L.C. v. Bonutti Research, Inc.*, 2011 U.S. Dist. LEXIS 1752 (S.D.Ohio Jan. 7, 2011), in support of its argument that it did not direct significant actions towards Ohio enough to establish personal jurisdiction. MRO notes that personal jurisdiction was not conferred on the *Shea* defendant even though it maintained one employee in Ohio, entered into agreements with 6 Ohio entities, and had 3 to 5 percent of its sales in Ohio. (Appellee's Brief at 32.) However, the *Shea* court's discussion of these facts occurred in the context of its *general jurisdiction* analysis, which is not at issue in this matter. *Shea* at *39-40. In its specific jurisdiction analysis, the court noted that the Illinois defendants' contacts with Ohio were electronic communications with plaintiffs' counsel, who just so happened to be located in Ohio. *Id.* at *33. The court found that the purposeful availment prong was not met because the defendants did not seek to further its business and create continuous and substantial consequences in Ohio. *Id.* Here, Kimball alleges that MRO used Kimball's confidential information to solicit its customers, including Kimball's Ohio customers, which would both cause consequences in Ohio and further MRO's already existing business interests in the state.

{¶ 34} Additionally, MRO cites to *Shepard & Assocs., Inc. v. Lokring Tech., L.L.C.*, 2022 U.S. Dist. LEXIS 19219 (N.D.Ohio Feb. 2, 2022), stating that the court rejected

jurisdiction where sales information using alleged Ohio-based secrets was directed to customers in Texas. (Appellee's Brief at 37.) There are two significant distinguishing facts in *Shepard*. First, unlike in this case, the personal jurisdiction analysis in *Shepard* involved the plaintiff's individual former employee, not a different company. *Shepard* at *35. Second, and most important, the court's analysis was under the preponderance-of-evidence standard following a hearing. In fact, the court preliminarily found that the pleadings and accompanying arguments established a prima facie case of personal jurisdiction. *Id*. at *12. It was only after holding a hearing and applying the stricter standard that the court determined personal jurisdiction did not exist. As such, *Shepard* has no application here.

{¶ 35} The cases cited by Kimball suffer from similar issues. For example, Kimball contends that *Cornelius*, 218 U.S. Dist. LEXIS 68106, is instructive in this matter. (Appellant's Brief at 25.) However, in *Cornelius*, the Ohio plaintiff alleged that the sole owner and member of a Colorado defendant engaged in a deliberate scheme to misappropriate plaintiff's confidential information from one of plaintiff's Ohio-based employees. *Cornelius* at *3-4, 24. In this case, the former Kimball employees who allegedly provided MRO with confidential information were never based in Ohio. Thus, MRO did not reach into Ohio to hire away Kimball's employees and obtain its trade secrets. Although it does not appear that the location of the plaintiff's employee played a role in the court's decision in *Cornelius*, it is still a material difference with the case at hand.

{¶ 36} Kimball also cites to *Just Funky, L.L.C. v. Boom Trendz, L.L.C.*, 2021 U.S. Dist. LEXIS 225407 (N.D.Ohio Nov. 23, 2021) in support of its position. However, *Just Funky* involved an Ohio plaintiff alleging that the defendant, a former employee based in India, misappropriated its trade secrets to set up a competing business in Ohio. *Id*. at *2. Here, Kimball alleges that MRO used its trade secrets to solicit its customers, including at least four in Ohio. Using an Ohio company's trade secrets to establish a competing business in Ohio is significantly different than using those trade secrets to solicit several Ohio-based customers.

{¶ 37} Turning now to the specific facts of this case, viewing the allegations in a light most favorable to the plaintiff, Kimball has made a prima facie case for personal jurisdiction over MRO in this matter. MRO maintains an employee in Ohio and has ten customers here. MRO hired eight former employees of Kimball, an Ohio company and direct competitor.

Subsequently, MRO solicited business from Kimball's customers, including at least four customers in Ohio. The rationale behind the purposeful availment requirement is to protect against defendants being haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts with that jurisdiction. *Ricker*, 2022-Ohio-1860, at ¶ 25 (10th Dist.). Here, it is alleged that MRO purposefully availed itself of acting in Ohio by maintaining an employee here, conducting business here, hiring eight employees away from an Ohio company, and then soliciting Ohio business from that Ohio company's customers using Kimball's confidential information. These alleged contacts are not random, fortuitous, or attenuated. They appear to be targeted and deliberate.

{¶ 38} Furthermore, a number of cases have found that " '[t]he misappropriation of trade secrets belonging to an Ohio company causes consequences in Ohio[,]' and satisfies the purposeful availment prong of *Southern Machine*." *Just Funky* at *7, quoting *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 168 (S.D.Ohio 2012); *see also Cornelius* at *13-14. Although this language appears to be unequivocal, it is unclear whether this applies to a situation where trade secrets are only obtained from a plaintiff's out-of-state employees and only used outside of the forum state. In any event, we need not make that determination here because Kimball alleges that MRO used its trade secrets to solicit at least four of Kimball's Ohio customers.

{¶ 39} MRO also argues that Kimball's complaint fails to allege sufficient facts to support personal jurisdiction, characterizing Kimball's allegations as "conclusory" in nature. (Appellee's Brief at 37.) In support, MRO cites *SES Environmental Solutions, L.L.C. v. Napier*, 2022 U.S. Dist. LEXIS 143665 (S.D.Ohio Aug. 10, 2022). However, the only two allegations in *Napier* connecting the defendant to Ohio were (1) the defendant advertised that the company serviced Ohio, and (2) an internal email between two employees of the defendant claimed a partnership with another company to provide services from Western Indiana to Western Ohio. *Id*. at *11-12. Notably absent, unlike in this case, are any allegations that the defendant had existing customers and/or used confidential information to solicit customers in the forum state.

{¶ 40} Based on the foregoing, we find that Kimball's allegations are sufficient to establish a prima facie case that MRO purposefully availed itself of Ohio law.

{¶ 41} The second prong of the due process analysis is met where the "defendant's contacts with the forum state are related to the operative facts of the controversy." *Kauffman Racing*, 2010-Ohio-2551, at ¶ 70. This only requires that the cause of action be substantially related to the defendant's activities in the forum state. *Ricker*, 2022-Ohio-1860, at ¶ 37 (10th Dist.).

{¶ 42} Here, Kimball is alleging misappropriation of trade secrets, tortious interference with contractual relationships, and unfair competition. The allegations made in support of these causes of action are that MRO hired eight former employees of Kimball, a direct competitor and Ohio company, and obtained Kimball's trade secrets and proprietary information from those employees. MRO then allegedly used that information to solicit business from Kimball's customers, including at least four Ohio customers. It follows that Kimball's causes of action are directly related to MRO's activities in Ohio, as well as the harm caused in Ohio by those activities. Thus, a prima facie case that the second prong of the personal jurisdiction due process analysis has been met.

{¶ 43} When the first two prongs of the personal jurisdiction due process analysis are met, an inference arises that the third prong is also satisfied. *Ricker* at ¶ 39. In determining whether a court's exercise of jurisdiction is reasonable, courts look at a number of factors, including, but not limited to: the burden on the defendant, the forum state's interest in adjudicating the dispute, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the plaintiff's interest in obtaining convenient and effective relief. *Id.* at ¶ 40. Only the "unusual case" will not meet the third prong. *First Natl. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982).

{¶ 44} Here, Ohio has a significant interest in redressing injuries that actually occur within the state. *Ricker* at ¶ 41. Furthermore, the burden of MRO litigating in Ohio would not be "unduly onerous." *Id.* at ¶ 42. MRO is located in Illinois, which is in the same region as Ohio. Many of the witnesses in this matter do not work or reside in Illinois. The former Kimball employees who now work for MRO reside in various states across the Midwest, including Pennsylvania, which shares a border with Ohio. Additionally, the federal litigation against the former employees is still pending in Ohio. Thus, it would be more consistent and efficient for the other portion of this controversy to also be litigated in Ohio.

Lastly, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where it engages in economic activity." *Burger King Corp.*, 471 U.S. 462 at 474. It is undisputed that MRO has customers in Ohio and therefore engages in economic activity here. It follows that Kimball established a prima facie case that the third prong of the personal jurisdiction due process analysis has been met.

{¶ 45} Because Kimball established a prima facie case that personal jurisdiction over MRO existed in Ohio, the trial court was required to hold a hearing on MRO's motion before dismissing the complaint.

{¶ 46} MRO also argues that we must affirm the trial court's order of dismissal based on the doctrine of collateral estoppel. Initially, it should be noted that it does not appear that MRO made a collateral estoppel argument in the trial court. Thus, MRO waived its argument of collateral estoppel. *Asad v. Asad*, 2001 Ohio App. LEXIS 5513, *5 (8th Dist. Dec. 13, 2001).

{¶ 47} However, even if MRO had raised its collateral estoppel argument below, we find that collateral estoppel does not apply in this case. "Where . . . there has been a change in the facts in a given action which either raises a new material issue, or which would have been relevant to a resolution of a material issue involved in the earlier action, neither the doctrine of *res judicata* nor the doctrine of collateral estoppel will bar litigation of that issue in the later action." *State ex rel. Westchester Estates, Inc. v. Bacon*, 61 Ohio St.2d 42, 45 (1980). Here, Kimball alleged new facts since the federal district court's decision was issued, specifically that MRO used Kimball's trade secrets and confidential proprietary information to solicit at least four of Kimball's Ohio customers. We find that this new fact would have been relevant to the federal court's resolution of the personal jurisdiction issue in the prior action. Thus, collateral estoppel does not apply here.

{¶ 48} Based on the foregoing, we find that the trial court erred in granting MRO's motion to dismiss for lack of personal jurisdiction without holding a hearing. Kimball's sole assignment of error is sustained.

{¶ 49} Although we find that Kimball met its burden of establishing a prima facie case for personal jurisdiction, we note that Kimball will still be required to prove personal jurisdiction by a preponderance-of-evidence at a pre-trial evidentiary hearing or at trial.

*Charter Jet Travel, L.L.C. v. NCA MaxJet, Inc.*, 2009 U.S. Dist. LEXIS 147814, *20 (N.D.Ohio Mar. 6, 2009). Like the court in *Shepard*, 2022 U.S. Dist. LEXIS 19219, nothing prevents the trial court from holding a subsequent hearing and dismissing the complaint if Kimball fails to meet its preponderance-of-evidence burden.

## V. CONCLUSION

{¶ 50} Having sustained Kimball's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and remand for further proceedings consistent with this decision.

*Judgment reversed*;
*cause remanded.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

————————————